RUEDY, APPELLEE, *v.* THE TOLEDO FACTORIES CO.; THE SAM DAVIS CO., APPELLANT.

(Decided March 6, 1939.)

*Messrs. Streicher & Krueger, Mr. Herbert F. Jenne*
and *Messrs. Fraser, Effler, Shumaker & Winn,* for appellee.

*Mr. Oscar J. Smith* and *Mr. P. R. Taylor,* for appellant.

OVERMYER, J. This cause, under above title, reached this court recently on appeal on questions of law from a verdict and judgment in favor of appellee in the sum of $22,950 recovered in Common Pleas Court against the appellant, The Sam Davis Company. This court, upon consideration, affirmed without written opinion the finding and judgment below. Appellant has presented an application for rehearing and in refusal of said application the court deems it proper to

set forth its views for such refusal and the affirmance of the judgment.

The issues in the case arise from the following admitted and proven facts:

On June 10, 1927, and for some years prior thereto, The Toledo Factories Company and The Sam Davis Company were corporations located and doing business in Toledo, Ohio, and engaged in much the same business, viz., buying and selling real estate and factory properties, buying and renting apartment homes, and other similar activities. Mr. Sam Davis, for whom The Sam Davis Company was named, and who owned 3,481 shares of a total of 3,525 outstanding shares of that company and was president of it, also owned 2,928 outstanding shares of a total of 3,000 shares of The Toledo Factories Company and was president of that company. A son of Mr. Davis, who was associated with him and was vice-president of both companies, owned 37 shares of The Toledo Factories Company and 21 shares of The Sam Davis Company stock. The Davis family therefore owned 99.3 per cent of the outstanding stock of The Sam Davis Company and 98.8 per cent of The Toledo Factories Company stock. Mr. Sam Davis was in full control of each corporation and directed the business affairs of both.

On the date above mentioned appellee, Albert Ruedy, sold to The Toledo Factories Company a parcel of property in Toledo with a three-story building thereon at a price of $17,500, on which a cash payment of $2,500 was made and the balance represented by a promissory note secured by mortgage on said premises. This note was due and payable in five years after date, to wit, June 10, 1932, and bore interest at 6 per cent, payable semi-annually, until maturity, thereafter 8 per cent. From the date of the note, the company met and paid all installments of interest as they became due up to December 31, 1928.

On the date last mentioned, Mr. Sam Davis, president and manager of both companies, decided, according to his own testimony, to "centralize" or "unite" the assets of both companies to "reduce overhead expense and simplify management" and "to put everything under one roof," the affairs and businesses of both companies having been conducted in the same offices, but with separate bookkeeping. At that date The Toledo Factories Company had assets of more than $1,300,000 and was fully solvent and able to pay all its obligations. On the date referred to, December 31, 1928, an agreement was entered into between The Toledo Factories Company and The Sam Davis Company, executed by Sam Davis on behalf and as president of each company, together with the secretary, whereby all the assets of The Toledo Factories Company, including the premises mortgaged to secure appellee's note, were transferred to The Sam Davis Company. The agreement, except formal parts, was as follows:

"That said first party (The Toledo Factories Company) in consideration of one dollar ($1.00) in hand paid, the receipt of which is hereby acknowledged, and of the promises and agreements of the said second party (The Sam Davis Company), hereinafter contained, does hereby agree to sell, assign, transfer and deliver to the said second party, its successors and assigns, its entire assets both real and personal, and consisting of various parcels of real estate in Toledo, Ohio, leasehold interests, contracts, accounts, credits, personal property, money in bank, etc., owned by first party as set forth in itemized statement hereto attached marked 'Exhibit A' and made a part of this agreement together with the good will established by said first party in connection with its business as heretofore conducted by it.

"Said first party further agrees to furnish the second party on or before January 1, 1929, its balance

sheet as of December 31, 1928, supported by detailed inventories of all assets together with schedules of all accounts and bonds and notes payable and other items of indebtedness, and also abstracts or opinions of title showing title to all its real property free and clear from all encumbrances whatsoever except taxes and special assessments for 1st half of the year 1928 due and payable in December, 1928, and subject to mortgages and liens as shown by the schedule hereinbefore referred to, and rents of any tenants of said premises.

"In consideration whereof said second party hereby agrees to purchase said entire assets for 743 shares of the common capital stock of this company to be issued and delivered to the stockholders of first party as follows:

"To Sam Davis          725 shares
"To E. L. Essinger        7 shares
"To Roi C. Davis          8 shares
"To Wm. C. Rowe           1 share
"To Carroll D. Smith      1 share
"To A. L. Myers           1 share

"Upon delivery to second party of said balance sheet, abstracts of opinions of title and good and sufficient deeds and transfers of all said property and assets upon the terms and conditions provided in this agreement; but subject to the entire indebtedness of said first party as shown by its balance sheet of December 31, 1928. It is mutually agreed by and between the parties hereto that all such instruments of conveyance shall be dated as of the close of business December 31, 1928."

In conformity with the agreement, The Toledo Factories Company stock was surrendered and the entire consideration for the transfer, viz., 743 shares of stock in The Sam Davis Company, was turned over, not to The Toledo Factories Company as a corporation, but directly to the individual shareholders of that company, who were also shareholders of The Sam

Davis Company, and by the terms of the agreement The Sam Davis Company was to receive a "balance sheet as of December 31, 1928, supported by detailed inventories of all assets together with schedules of all accounts and bonds and notes payable and other items of indebtedness, * * * showing title to all its real property free and clear * * * and subject to mortgages and liens. * * *" This was done. It further provides in the agreement that the 743 shares of stock of The Sam Davis Company will be issued to the stockholders of The Toledo Factories Company upon delivery of deeds, etc., "but subject to the entire indebtedness of said first party as shown by its balance sheet of December 31, 1928." This also was done, and the balance sheet referred to showed the indebtedness of The Toledo Factories Company on the note to appellee herein and the mortgage securing same. The Toledo Factories Company was then dissolved.

No notice of the transfer of the assets of The Toledo Factories Company was given to appellee or other creditors of said company. After the transfer, The Sam Davis Company paid all accounts of The Toledo Factories Company except appellee's note, which was not then due. The Sam Davis Company set up on its books appellee's note and mortgage as a liability, listed same as a liability in its income tax return for 1929, and made all interest payments on said note as they came due until maturity on June 10, 1932, then defaulted. At that time appellee first learned of the transfer above recited.

On June 26, 1934, appellee brought an action on the note against The Toledo Factories Company, The Sam Davis Company, and other parties, and for foreclosure of his mortgage. On trial a general demurrer was entered by The Sam Davis Company and all defendants other than The Toledo Factories Company, and same was sustained, and The Toledo Factories Company thereupon confessed judgment in the sum of

$18,831.78, and a directed verdict was entered against The Toledo Factories Company in that amount, and motion for new trial waived, followed by judgment. Foreclosure of the mortgage was decreed. At the same time appellee was given leave to file an amended petition, which was done on March 9, 1935. Later a second amended petition was filed against The Toledo Factories Company and The Sam Davis Company only, and all other defendants were dismissed from the case. Issues were made up and trial had, resulting in a verdict and judgment against The Sam Davis Company in the sum of $22,950. From that judgment an appeal was prosecuted by The Sam Davis Company, and this court affirmed the judgment.

In the second amended petition, after reciting substantially the facts above referred to, appellee alleged that by such sale, assignment, transfer and delivery of all assets from one corporation to the other, under the circumstances alleged, the two corporations were merged and consolidated, and that The Sam Davis Company thereby became liable for and assumed the obligations and debts of The Toledo Factories Company; that appellee has a judgment against The Toledo Factories Company and a decree of foreclosure, but that the judgment is wholly unsatisfied, and judgment is asked against The. Sam Davis Company for the amount due on appellee's note, with interest.

In its answer The Sam Davis Company admits all allegations of fact in the second amended petition except that it denies it assumed to pay the note aforesaid or that it is in any manner liable thereon. It pleads various defenses including the statute of limitations, misjoinder of parties, *res judicata,* no assumption of the debt or any liability thereon, and a denial of merger or consolidation of the corporations, but says the transfer was a sale of all assets by one corporation to another.

An abridgment of the foregoing statement of facts

would have been desirable, but in our view the particular facts here are quite determinative of the issues. The principal contentions of the Sam Davis Company on appeal and in its present application are:

1. That The Sam Davis Company never assumed the note and mortgage given by The Toledo Factories Company to appellee, and that its name nowhere appears on said note, and therefore the second amended petition does not state a cause of action.

2. That there can be no such thing as a *de facto* consolidation of corporations under the laws of Ohio, and that in this case no attempt or colorable attempt was made to follow the statutes of Ohio relating to merger or consolidation, but every step taken was taken under the law as to sale of assets of one corporation to another corporation and that therefore there was no assumption, express or implied, of the obligation sued on.

In the application herein it is further urged that no case has been presented by either side saying that a corporation, to which all assets of another corporation have been transferred, must pay the debts of the transferring corporation, except it be shown:

a. That the purchasing corporation was a continuation of the selling corporation, or

b. Merger or consolidation, or

c. Agreement to assume liability, or

d. That the transaction was fraudulent.

It is then argued that the facts pleaded in the second amended petition do not meet any of these requirements, resulting in error in failing to sustain a demurrer to it, failing to sustain a demurrer to the evidence, and in failing to direct a verdict at the close of the evidence. With the arguments thus advanced we cannot agree because of facts and circumstances shown by the record.

First, in our view, regardless of the words "sale" or "assignment" used in the corporation proceedings

and contract, the transfer in this case was in fact a merger or consolidation of the two companies and a "continuation of the selling corporation" for the benefit of The Sam Davis Company, whereby the assets of The Sam Davis Company were enriched and augmented, and as a result of which The Toledo Factories Company had no assets whatever to meet its obligation to appellee when it became due if the mortgaged premises would not satisfy it. The evidence shows that after the sale of the premises by appellee to The Toledo Factories Company and the execution of the note and mortgage by it to him and four or five years after the transfer to The Sam Davis Company, the three-story frame building on the premises was removed, and thereby appellee's security was reduced by at least $5,000, leaving only a bare, low-lying lot. In the verified income tax return of The Sam Davis Company for the year 1929 it is stated that The Toledo Factories Company was acquired during the previous year and The Sam Davis Company a continuation thereof, and in answer to the question whether the asset values of The Sam Davis Company were increased or decreased by such change, it is answered "no," thereby indicating a consolidation and not a sale and purchase.

Second, the acts of The Sam Davis Company in signing the contract referred to whereby it took said assets subject to the obligations of The Toledo Factories Company shown by the "balance sheet," one item of which was the note in question, and then setting up the note and mortgage on its own books and treating it as a direct obligation of its own and so reporting it for income tax purposes; and further by its acts in failing to notify appellee of the proposed transfer of assets, thereby preventing him from taking steps to protect himself, and by paying the interest installments as they came due for three years and thereby lulling him into inaction and into the belief .

that the debt and mortgage had been assumed and thus having the use of the principal until maturity and then disavowing the note—all these acts appear clearly to us to indicate either a definite intention to assume the note or a studied purpose to avoid the obligations of it when it did mature. These acts amount either to an implied assumption of the obligations of the note and mortgage, or unfair dealing which cannot be approved.

Third, from all the circumstances it could be concluded that the transfer was designedly labeled a "sale" instead of a consolidation, and that the steps taken, not under the merger or consolidation statutes but under the "sale" statutes, were to avoid the status created by a merger or consolidation under the law. If it is in fact a merger or consolidation, as this court thinks it is, it would be quite unconscionable to permit appellant now to say that it followed the wrong statutes in making the transfer; that it made a mistake and therefore it is not liable.

Fourth, there is a term in law called "constructive fraud" which may arise from proven facts and circumstances, though not definitely pleaded.

"*Legal* or *constructive fraud* includes such contracts or acts as, though not originating in any actual evil design or contrivance to perpetrate a fraud, yet by their tendency to deceive or mislead others or to violate private or public confidence, are prohibited by law." 2 Bouvier, Third Revision, 1304.

"4. It may be collected from the nature and circumstances of the transaction, as being an imposition on third persons." 2 Bouvier, Third Revision, 1306. See also *American Ry. Express Co.* v. *Commonwealth,* 190 Ky., 636, 228 S. W., 433.

It is urged that appellee should in any event be required first to pursue the assets of The Toledo Factories Company, especially the premises covered by his mortgage. The answer to this claim is that when

the note matured there were no assets of The Toledo Factories Company separable from the assets of The Sam Davis Company, except the premises covered by the mortgage, and these, since the mortgage was executed, have been greatly reduced by the removal of the building which was tenantable and had been occupied and producing income. The commingling of assets was done by The Sam Davis Company at its peril, knowing of the obligation of the note and mortgage. All the assets of both corporations are now in one pocket instead of two pockets of the same coat. They were put in there by The Sam Davis Company.

In the absence of other authority, we should be compelled to say that the facts before us would not permit a court to sustain the claims advanced by appellant. However, there is abundant authority to sustain our conclusion, some of which we cite without further extending this memorandum, as follows:

7 Ruling Case Law, 181, Section 155 *et seq.; Bruce-MacBeth Co.* v. *Eustis Mfg. Co.*, 8 Ohio App., 341, and cases cited therein; *West Texas Refining Co.* v. *Comm. of Int. Rev.*, 68 F. (2d), 77, and cases cited therein; 10 Ohio Jurisprudence, 131, Section 64; *Hibernia Ins. Co.* v. *St. Louis & N. O. Transp. Co.*, 13 F., 516, 120 U. S., 166, 30 L. Ed., 621; *American Ry. Express Co.* v. *Downing*, 132 Va., 139, 111 S. E., 265; *Chicago, S. F. & C. Ry. Co.* v. *Ashling, Admx.*, 160 Ill., 373, 43 N. E., 373; *Andres* v. *Morgan, Trustee*, 62 Ohio St., 236, 56 N. E., 875; *Hummel, Sr.*, v. *Hummel*, 133 Ohio St., 520, 14 N. E. (2d), 923; *MacQueen* v. *Bank Co.*, 133 Ohio St., 579, 15 N. E. (2d), 529; *Heid* v. *Vreeland*, 30 N. J. Eq., 591; *Mullin* v. *Nash-El Paso Motor Co.* (Tex. Civ. App.), 250 S. W., 472.

Other errors, relating to admission and rejection of evidence; rejection of special requests to charge; error in the charge given; and failure to charge as requested at the close of the general charge, are claimed by appellant. We examined the record with reference

to all of them and found none of them of prejudicial character requiring reversal of the judgment.

Finding that the verdict was not against the manifest weight of the evidence and that no prejudicial error appeared requiring reversal of the judgment, the same was affirmed, to which finding and order we adhere.

The application for rehearing is denied.

*Application for rehearing denied.*

CARPENTER and LLOYD, JJ., concur.