Donald SHANNON and Carol Shannon, Plaintiffs,.

v.

SAMUEL LANGSTON COMPANY, aka Langston Company, a Division of Harris Intertype Corporation, Defendant.

No. C.A. 242.

United States District Court, W. D. Michigan, S. D.

May 31, 1974.

John L. Schwendener, Kalamazoo, Mich., for plaintiffs.

Grant J. Gruel, Grand Rapids, Mich., for defendant.

## OPINION AND ORDER

FOX, Chief District Judge.

This case is presently before the court on the plaintiffs' motion for partial summary judgment. The parties have entered into extensive stipulations of fact and have jointly submitted many documentary exhibits with their proposed Final Pre-Trial Order. This order is based upon the stipulations, exhibits, and depositions on file.

The plaintiffs are Donald and Carol Shannon. On June 14, 1967, Donald Shannon, as an employee of the Packaging Corporation of America at its Portage, Michigan, plant, was injured by a cardboard printer-slotter which had been designed and manufactured by Samuel M. Langston Company, a New Jersey corporation, about 1952. Mr. Shannon lost his left arm while working the Langston machine.

The parties have agreed that the plaintiffs would be entitled to damages in the amount of $45,000 from the Samuel M. Langston Company if that company were still in existence. However, that company was dissolved according to

New Jersey law after all its operating assets had been purchased by Harris Intertype Corporation, a Delaware corporation. The sole issue remaining in this case is whether Harris Intertype is legally liable to pay the stipulated monetary damages incurred by the plaintiffs as a result of Donald Shannon's injury on the Samuel M. Langston Company printer-slotter.

The issue of whether Harris Intertype is liable for personal injuries caused by machines manufactured by Samuel M. Langston Company before 1966 has previously been decided by Circuit Judge Albert J. Engel sitting as District Judge by designation in a case very similar to that now before the court, Fairfield v. Samuel M. Langston Company, a division of Harris Intertype, No. K–56–71 C.A. (March 12, 1974). Judge Engel ruled that the acquisition of the assets of Samuel M. Langston Company by Harris Intertype, was a consolidation or merger of the two corporations, or, alternatively, that the purchasing corporation was merely a continuation of the old corporation. On these grounds, Harris Intertype was held to be liable as a matter of law.

Although Judge Engel's ruling is entitled to great precedential weight, it is not technically dispositive of the present motion. The parties have put the question of the liability of Harris Intertype at issue once again, and the court has re-examined the matter.

The Samuel M. Langston Company of Camden, New Jersey, was organized in 1901 under the laws of New Jersey, and was engaged in the manufacture and sale of machinery used by manufacturers of corrugated paper boxes and by paper mills.

Several companies in existence before 1957 became known as Harris Intertype Corporation in that year with their headquarters in Cleveland, Ohio.

On May 26, 1966, the Harris Intertype Corporation entered into a contract with the Samuel M. Langston Company entitled "Purchase Agreement between Harris Intertype Corporation and Samuel M. Langston Company." That Agreement was modified on June 2, 1966. (The modified agreement will hereafter be referred to as the "Purchase Agreement.")

After the Purchase Agreement was signed, Harris Intertype formed a new corporation known as The Langston Company on or about June 26, 1966. On August 9, 1966, the purchase of the Samuel M. Langston Company was closed and consummated, with The Langston Company taking over operations in accordance with the agreements and closing memoranda.

Essentially, Harris Intertype acquired all the assets of the Samuel M. Langston Company, including the Langston name. Harris Intertype paid for the assets exclusively with its own stock.

In accordance with the Purchase Agreement, the old Samuel M. Langston Company changed its name to the SML Corporation so as to avoid any confusion between the old company and the new operating subsidiary of Harris Intertype, The Langston Company. The price of the assets was paid in due time and the Samuel M. Langston Company voluntarily dissolved, distributing the Harris Intertype Corporation stock to its shareholders for the purpose of liquidation.

■ The Langston Company was a wholly-owned subsidiary of Harris Intertype, and remained so until June 30, 1968, when it was statutorily merged with the Harris Intertype Corporation. Since that date the operations which had been The Langston Company became the operations of The Langston Division of Harris Intertype Corporation. At all times pertinent to this suit, The Langston Company and The Langston Division have been under the complete control of Harris Intertype Corporation. If The Langston Company or The Langston Division is liable, Harris Intertype is liable as a matter of law. Fairfield, Opinion and Order, at 5.

It is important to the issue before the court that the organization and opera-

tions of the old Samuel M. Langston Company were continued substantially unchanged after the company was taken over by The Langston Company, Harris Intertype's wholly owned subsidiary, in 1966. Apart from the addition of a policy-making level of management in the form of a new Chairman of the Board, the operating management remained substantially the same, and substantially all the Samuel M. Langston Company employees became employees of The Langston Company. The corporate headquarters remained the same. The cash in the bank accounts of the Samuel M. Langston Company were transferred into the newly established account of The Langston Company, and these authorized banks were instructed that the checks of the Samuel M. Langston Company issued before August 9, 1966 were to be paid from the accounts of The Langston Company.

At the time of the closing on August 9, 1966, the sales records and engineering records for the Samuel M. Langston Company printer-slotter on which Mr. Shannon was injured were part of the records of the Samuel M. Langston Company.

### A.

■ The old Samuel M. Langston Company was a New Jersey corporation with its principal place of business in that state. Although Harris Intertype is a Delaware corporation with its headquarters in Ohio, and although the purchase agreements in this case were signed in Ohio, the locus of the manufacturing operations before and after 1966 was New Jersey. The Langston Company, Harris Intertype's subsidiary, was a New Jersey corporation, and the transfer of Samuel M. Langston Company assets to The Langston Company took place in New Jersey. Thus, the court finds that New Jersey corporation law applies.

### B.

The Superior Court of New Jersey recently summarized the law of that state:

It is the general rule that where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, including those arising out of the latter's tortious conduct, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape liability for such debts. Jackson v. Diamond T. Trucking Co., 100 N.J.Super. 186, 241 A.2d 471 (Law Div.1968); Andres v. Morgan, 62 Ohio St. 236, 56 N.E. 875 (Sup.Ct.1900); Ruedy v. Toledo Factories Co., 61 Ohio App. 21, 22 N.E.2d 293 (App.Ct. 1939); Kloberdanz v. Joy Mfg. Co., 288 F.Supp. 817 (D.Colo.1968); 19 Am.Jur.2d, § 1546, at 922. A fifth exception, sometimes incorporated as an element of one of the above exceptions, is the absence of adequate consideration for the sale or transfer. 19 Am.Jur.2d § 1551, at 927; 7 Fletcher, Cyclopedia of Corporations, § 4751 (1919 ed.).

McKee v. Harris-Seybold Co., Div. of Harris-Intertype Corp., 109 N.J.Super. 555, 264 A.2d 98, 101–102 (L.Div.1970), aff'd. 118 N.J.Super. 480, 288 A.2d 585 (App.Div.1972).

The specific issue is whether the acquisition of the Samuel M. Langston Company by Harris Intertype falls into one of the stated exceptions to the general rule which would insulate the latter from liability in this case.

### C.

■ A purchaser of corporate assets will be liable for the debts and liabilities of the transferor when the transaction amounts to a consolidation or merger of the seller and purchaser.

■ If the transaction here in question is anything other than an ordinary

purchase of assets, it is a merger between Harris Intertype and the Samuel M. Langston Company. A merger contemplates the absorption of the acquired corporation's operations by the acquirer, and the practically contemporaneous dissolution of the acquired corporation as a legal entity. McKee, supra, 264 A.2d at 103.

In McKee, the court, reviewing many cases from New Jersey and other jurisdictions, stated the characteristics of a *de facto* merger, as distinguished from an ordinary purchase and sale of assets. These can be summarized as follows:

(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.[1] Supra, 264 A.2d at 103–105.

■ Applying the tests set forth in McKee and other cases, the court concludes that the transaction in question in this case was clearly a *de facto* merg-er between Harris Intertype and Samuel M. Langston Company. There was certainly a continuity of management, personnel, physical location, assets, general business operations, and shareholders. Harris Intertype gave only stock for the assets it acquired, and by the terms of the Purchase Agreement, Article Eight, those Harris Intertype shares not reserved to satisfy Samuel M. Langston Company's debts were to be distributed to Langston's shareholders. In addition, by the terms of the Purchase Agreement, Samuel M. Langston Company changed its name, ceased ordinary operations, liquidated, and dissolved as quickly as possible. The Samuel M. Langston Company in no sense continued as an operating company. Furthermore, Harris Intertype assumed all those debts and obligations of Samuel M. Langston Company which were necessary for the uninterrupted continuation of normal operations of the Samuel M. Langston Company, Purchase Agreement, Art. Three, Sec. 3.2.

The cases in which the courts have found that there was no *de facto* merger are all distinguishable on their facts. Most importantly, McKee, supra, involved a situation in which the purchasing corporation paid for the acquired assets principally in cash, so that the stockholders of the seller corporation never became a part of the purchasing corporation. As the court said, the "two corporations . . . were strangers before the sale and continued to remain strangers after the sale," 264 A.2d at 104. However, in the present case, although the two corporations were strangers before the transaction, they were not strangers afterwards because the purchase of assets was exclusively

[1]. There is some ambiguity in the cases as to the extent of the obligations which must be assumed by the purchasing corporation for the transaction to be legally a *de facto* merger. Some cases imply that a purchasing corporation must assume all the liabilities of the seller. However, exception number one to the general rule concerning the non-liability of asset-purchasing corporations covers the express assumption of liabilities by the purchaser. If a requirement of express assumption of all liabilities were found in exception number two, the *de facto* merger situation, then exception number two would be totally superfluous. The test in the inquiry for a *de facto* merger must be a functional one, keyed to practical considerations involved in the pooling of interests and continuity of operations.

with the stock of the purchasing corporation.

In the Jackson case, supra, which involved an attempt to collect a liquidated workmen's compensation award, the perceptive New Jersey judge noted the tendency of cases in the area of corporate liability to set forth factual situations in detail and to jump from these to legal conclusions, 241 A.2d at 474. The question of whether a transferee of assets is liable for the debts and liabilities of the transferor, he noted, must ultimately be decided by weighing the "policy protecting corporate creditors . . . against the equally important policy respecting separate corporate entities." Id. at 477.

In the case presently before the court, elemental justice plainly requires that Mr. Shannon and his family be compensated for his injury if the parties ultimately responsible for his injury can be found. Indeed, the defendant has conceded that the plaintiff was damaged in the amount of $45,000 as a result of the defects in the Samuel M. Langston Company machine on which he was working at the time his injury occurred. The public policy behind the evolving common law of products liability is that the enterprise, the going concern, ought to bear the liability for the damages done by its defective products. While the incidence and amounts of such damages are not perfectly predictable, they are nonetheless regarded as an economically and socially necessary cost of doing business.

In this case, the enterprise, Samuel M. Langston Company, continued substantially unchanged after it had been acquired by the Harris Intertype Corporation in 1966. Harris Intertype got all the advantages of an established going concern, including expertise, reputation, established customers, and so forth. Public policy requires that Harris Intertype, having received the benefits of a going concern, should also assume the costs which all other going concerns must ordinarily bear.

New Jersey is careful to retain a "favorable corporate climate." Jackson, supra, 241 A.2d at 478. In the area under discussion, this means that generally New Jersey tends to give corporations the maximum leeway consistent with enlightened public policy to organize their affairs as they see fit. More particularly, New Jersey does not seek to impose artificial "restraints on alienation" which would unnecessarily impede economically desirable and socially useful corporate reorganization or realignment of existing interests.

However, nothing in the present decision would tend to impose such artificial restraints. If a corporation is a strong going concern, a prospective corporate purchaser will not be deterred from acquiring the assets for stock, but will merely adjust the price paid to reflect the possible products liability which goes with the acquisition of a going concern. Since the prospective seller will have to bear these product liability costs if the deal does not go through, he will not be deterred from selling if the purchase price is fair. In practice in nearly all cases, the acquiring corporation will merely arrange for the continuation of the products liability insurance maintained by the seller, and the price of the acquired corporation will be adjusted to take the projected premium into account. The decision of the court simply means that the seller and purchaser corporations will not both be able to profit by cutting off liability for damages to battered and maimed people.

Maintaining a favorable corporate climate does not mean unrestricted laissez faire in New Jersey or in any other state, so far as the court is aware. In acquiring the assets of Samuel M. Langston Company instead of the corporation itself, Harris Intertype deliberately evaded New Jersey statutory merger requirements. Deposition of Paul S. Brentlinger, Harris Intertype Vice President for Corporate Development; Manager of Industrial Development from 1957 to 1969, at 19–20. These statutory merger requirements

are designed to protect all interests in corporations, including corporate creditors, see Jackson, supra, 241 A.2d at 478. New Jersey can hardly develop a policy of encouraging the evasion of its own corporation code, especially where strong considerations of justice to individuals and enlightened social policy counsel a contrary result.

Moreover, while the law for good reasons bars some claims by the statute of limitations and provides for the discharge of others in the event of insolvency and bankruptcy, the law cannot in justice grant corporations a greater ability to avoid liabilities than it grants to natural persons. Human beings are created in the image and likeness of God, Genesis I:27, and their fundamental rights inhere in them as creatures of the Creator. The inalienable right of a human being to life and freedom from a maimed body is inalienable, and of tremendous importance to the integrity of a democratic society. Corporate entities are artificial beings existing only in contemplation of law, and are created by legislative fiat. Whatever rights corporations have are granted to them by the legislature. The solvent natural person cannot avoid his liability for injuries caused by him simply by changing the form of his property or by changing his name or by changing the numbers on his bank accounts. Similarly, solvent corporations, going concerns, should not be permitted to discharge their liabilities to injured persons simply by shuffling paper and manipulating corporate entities.

### D.

The court having concluded that the transacton between Samuel M. Langston Company and Harris Intertype was a *de facto* merger under New Jersey law, and that Harris Intertype is therefore liable as a matter of law for the stipulated monetary damages of the plaintiffs in this case, the plaintiffs' motion for partial summary judgment is granted, and judgment shall be entered against the defendant Harris Intertype Corporation in the amount of $45,000, plus costs to be taxed.

It is so ordered.