In the Matter of KORHUMEL INDUSTRIES, INC., Debtor.

KORHUMEL, INC., Plaintiff–Appellant,

v.

KORHUMEL INDUSTRIES, INC., Bernard Chaitman, as Trustee, etc., Defendants–Appellees.

Nabil EL–SORROGY, Plaintiff–Appellee,

v.

KORHUMEL INDUSTRIES, INC., etc., Defendant–Appellee,

and

Newton Korhumel, Lee Korhumel, K Steel Co., and Korhumel Electric Corp., Defendants–Appellants.

Nos. 88 C 7536, 88 C 7716.

United States District Court, N.D. Illinois, E.D.

July 28, 1989.

Thomas L. Brejcha, Jr., David G. Duggan, Abramson & Fox, Chicago, Ill., for Korhumel, Inc.

Andrea R. Waintroob, John D. Jeske, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Norman B. Newman, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Gerald Munitz, Nachman, Munitz, Sweig, Ltd., Chicago, Ill., for Korhumel, Industries, Inc.

Deborah L. Thorne, Karen K. Litscher, Ronald F. DeNardis, Ellen Roberts, Mark Grayell, Feikens, Foster, VanderMale and Denardis, Detroit, Mich., for Unsecured Creditors Committee.

Nelson Hembree, Edwin J. Shinitzky, Ronald M. Brown, Brown & Shinitzky, Chartered, Chicago, Ill., for Nabil El-Sorrogy.

Thomas L. Brejcha, Jr., John J. Jawor, Abramson & Fox, Chicago, Ill., for Newton Korhumel et al.

Francis P. Smith, Shelmerdeane A. Miller, Bryan R. Orr, Shaheen, Lundberg, Callahan & Orr, Chicago, Ill., for other defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Korhumel Industries, Inc. is an Illinois corporation which used to manufacture and sell farm equipment. The business did not treat Korhumel well, and so in February 1982, Korhumel filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Over three years later, in December of 1985, the bankruptcy court of this district confirmed the Amended Plan of Reorganization proposed by the Committee of Unsecured Creditors of Korhumel. The Amended Plan established the Korhumel Liquidation Trust and provided for appointment of Bernard Chaitman as Liquidating Trustee. The bankruptcy court's order of confirmation resulted in transfer of all of Korhumel's assets to the Trust, for purposes of liquidation and distribution of the proceeds to Korhumel's creditors.

That Korhumel was undergoing bankruptcy, reorganization, and liquidation did not mean that the world had stopped using Korhumel's products (although one could speculate that had more people used them, perhaps Korhumel would not have become bankrupt). In February 1986, a Michigan resident, Nancy Sudau, was unloading ear corn from a Korhumel-manufactured gravity wagon-hopper at a grain elevator. Without warning the hopper came apart and tipped over, pinning Sudau underneath the hopper and its 2000–pound cargo of corn. The load crushed Sudau's pelvis and caused her numerous internal injuries. Sudau believed that Korhumel was at fault for the accident, and so on September 30, 1986 Sudau and her minor children filed suit against Korhumel in the Circuit Court of Wayne County, Michigan. This suit charged negligence, breach of warranty, and strict products liability.

Sudau did not serve Korhumel with summons until February 23, 1987. At that time she learned not only that she had sued a company that was in bankruptcy, but also that important things had happened in those bankruptcy proceedings since the time of her accident. Chief among these events was liquidation of Korhumel's assets. Pursuant to a written offer, on April 1, 1986 the Trustee had sold Korhumel's assets to a company called Korhumel, Inc., an Illinois corporation. (For the remainder of this opinion this court will refer to Korhumel Industries as "Old Korhumel" and Korhumel, Inc. as "New Korhumel.") The bill of sale which New Korhumel received from the Trustee stated that the Liquidator had sold the assets "free and clear of all liens, claims and encumbrances," except for certain liabilities.

Before Sudau could sue New Korhumel directly, New Korhumel filed a complaint for declaratory judgment on September 29, 1987 (adversary case No. 87 A 941) against Old Korhumel, the Trustee, and the Sudaus in the bankruptcy court. The Sudaus answered New Korhumel's complaint and raised the affirmative defense that the bankruptcy court lacked jurisdiction. The Trustee for his part moved to dismiss the complaint for lack of jurisdiction over the claim and the absence of a case or controversy. New Korhumel successfully moved to amend its complaint on February 1, 1988, and augmented its prayer for relief. The Sudaus in turn filed a cross-claim against the Trustee and Old Korhumel on April 15, 1988.

As New Korhumel, Old Korhumel, the Trustee and the Sudaus were wrangling over New Korhumel's declaratory judgment action, in March 1988 the Unsecured Creditors Committee of Old Korhumel moved for authorization to settle claims against Old Korhumel in an adversary suit filed by Nabil El–Sorrogy (adversary case No. 82 A 2023). This suit named Old Korhumel as a defendant, along with four parties to whom this court will refer as the "Korhumel Group": Newton and Lee Korhumel, K Steel Company, and Korhumel Electric Corporation. The Committee moved further for a distribution from the

Trust and an order directing the Trustee to withhold amounts sufficient to cover certain contingent claims.

The Korhumel Group and New Korhumel objected to the motion for settlement and distribution in April 1988. They argued that the Trust was composed largely of the proceeds of the Trustee's sale of Old Korhumel's assets to New Korhumel, and that it would disadvantage New Korhumel if the Trustee distributed the proceeds before the bankruptcy court had determined who might be liable to the Sudaus. The Korhumel Group and New Korhumel also claimed that the bankruptcy court had pending before it motions for summary judgment that would have disposed of El–Sorrogy's claims.

After lengthy proceedings, the bankruptcy court concluded that the Sudaus had no claims against the Trustee and Old Korhumel, and thus it struck the Sudaus' cross-claims. The court then stated that "the sole remaining issue" on the Sudau matter "is whether this Court has jurisdiction with respect to [the Sudaus'] claim against [New] Korhumel." Relying on *Matter of Chicago, Rock Island and Pacific R. Co.*, 794 F.2d 1182 (7th Cir.1986) (hereafter "*Sanborn II*"), and *Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987), the bankruptcy court determined that the Trust, Old Korhumel, and the Trustee should not have been parties to New Korhumel's action for declaratory judgment, since New Korhumel sought no relief from Old Korhumel or the Trustee. In the court's view, what New Korhumel really desired was a declaration of its rights only against the Sudaus. The court stated that "pursuant to the *Rock Island* and *Xonics* cases, this Court has no jurisdiction with respect to the disputes between [the] Sudau[s] and [New] Korhumel."

The bankruptcy court thus struck New Korhumel's claims against Old Korhumel and the Trustee. The court followed this with a dismissal of New Korhumel's remaining claims for lack of jurisdiction. New Korhumel subsequently moved to amend its complaint to add claims against the Trustee for contribution, indemnity, or

rescission. The bankruptcy court denied this motion.

Having disposed of the Sudau matter, the bankruptcy court turned to the proposed settlement of El–Sorrogy's claims against Old Korhumel and the interim distribution to Old Korhumel's general unsecured creditors. The bankruptcy court noted that the Committee had represented to the court that compromising El–Sorrogy's claims was in the best interests of Old Korhumel's creditors, and that all of those creditors had notice of the proposed settlement. On this basis the bankruptcy court approved the settlement. The court then dismissed El–Sorrogy's claims against the Korhumel Group for lack of jurisdiction, and allowed a distribution from the Trust.

New Korhumel has appealed the bankruptcy court's decisions to this court under 28 U.S.C. § 158(a) (1984 Supp.). This court will treat each case separately.

*Sudau Adversary Case*

New Korhumel contends that the bankruptcy court erred in dismissing its claims and denying the company's subsequent motion to amend its complaint. New Korhumel initially argues that the bankruptcy court acted rashly in reaching its decision, without the benefit of the parties' discovery or receipt of any evidence. In the next breath, New Korhumel accuses the bankruptcy court of considering too much, of not limiting itself to the allegations contained in New Korhumel's complaint. This court will dismiss these groundless attacks on the bankruptcy court's conduct of the proceedings below. The bankruptcy court legitimately relied on the Sudaus' characterizations of their own claims in dismissing the cross-claims against Old Korhumel and the Trustee, and it confined itself to the amended complaint in evaluating the motions to dismiss. While this court may disagree with the bankruptcy court's conclusions, New Korhumel has demonstrated no error in the way the bankruptcy court considered this matter.

The court will now turn to the real issue: did the court below err in dismissing New Korhumel's claims? The bankruptcy court's analysis of the motions to dismiss admits ambiguity. Its order seems to be clear: it dismissed New Korhumel's complaint against Old Korhumel and the Trustee on the merits, then dismissed New Korhumel's claim against the Sudaus for lack of jurisdiction. Nevertheless, Old Korhumel and the Trustee never attacked the merits of New Korhumel's complaint in any motion—their motions related solely to the bankruptcy court's jurisdiction. This court will thus examine both of these arguments: whether the bankruptcy court had jurisdiction, and, if so, whether Old Korhumel and the Trustee were proper parties to New Korhumel's suit.

Title 28, U.S.C. § 1334(b) (1984 Supp.) grants the district courts "original jurisdiction ... of all proceedings arising under title 11, or arising in or relating to cases under title 11." The law provides further that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not relief is or could be sought." 28 U.S.C. § 2201 (1982).

■ While these two provisions work to give the district courts the power to issue declaratory judgments in bankruptcy matters, their effect on the powers of the bankruptcy courts is less clear.[1] Section 2201 grants the power to render declaratory relief to "any court of the United States," which 28 U.S.C. § 451 defines as including "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of [Title 28], including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." Congress established the bankruptcy courts, but bankruptcy judges are not entitled to hold office during good behavior—rather, they serve for 14–year terms, and if the judges

---

**1.** None of the parties has raised this issue, but as it relates to the subject-matter jurisdiction of the bankruptcy court, the court is obliged to raise and discuss the issue on its own initiative.

of the court of appeals for the circuit where the bankruptcy judge serves do not like the judge, at the end of the bankruptcy judge's term the circuit judges can remove the judge, regardless of his or her deportment. See 28 U.S.C. § 152(a)(1) (1984 Supp.); see also *Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242, 246–47 (3d Cir.1980) (bankruptcy courts not among "courts of the United States" for purposes of 28 U.S.C. § 451 and § 2201); *In re Arkansas Communities, Inc.*, 827 F.2d 1219, 1221 (8th Cir.1987) ("questionable" whether bankruptcy courts are within definition of § 451 for purposes of 28 U.S.C. § 1927); *Matter of Richardson*, 52 B.R. 527, 531–32 (Bankr.W.D.Mo.1985) (bankruptcy courts not "courts of the United States" for purposes of 28 U.S.C. § 1927). Section 2201 thus does not grant the bankruptcy courts the power to grant declaratory judgments in cases properly within their jurisdiction.

This does not mean that the bankruptcy courts are without this power. Section 157(a) of the Judicial Code, 28 U.S.C. § 157(a) (1984 Supp.), provides for referral of "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts. Through standing referral orders such as this district's Local Rule 2.33(a) the district courts effectively delegate their power to hear certain declaratory judgment actions to the bankruptcy courts. The new Bankruptcy Code and its Rules contemplate such a delegation, and provide for declaratory judgments in such cases. See 28 U.S.C. § 157(b)(1) (bankruptcy judges "may enter appropriate orders and judgments"); Bankr.R. 7002 (adversary proceedings include proceedings in bankruptcy court to obtain declaratory judgments relating to eight categories of claims). This court thus concludes that, notwithstanding the lack of authorization for declaratory judgments under 28 U.S.C. § 2201, the bankruptcy courts may issue declaratory judg-

ments in adversary proceedings which are properly within their jurisdiction.

■ The court now turns to the more contested issue here: was New Korhumel's suit within the jurisdiction of the bankruptcy court? More exactly, the question is whether New Korhumel's case was under Title 11, was a proceeding arising in or under Title 11, or was a proceeding related to a case under Title 11.[2] See 28 U.S.C. § 157(a). New Korhumel's primary argument is that its case "arises under" Title 11. Congress borrowed this phrase from 28 U.S.C. § 1331 (1982), which gives the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 130 Cong.Rec. 13066 (May 21, 1984) (Sen. Hatch, declaring that the "arising under" language of Bankruptcy Amendments of 1984, Pub.L. 98–353, 98 Stat. 340, is "well established" under decisions construing 28 U.S.C. § 1331 and Article III of the Constitution). Traditionally, a case is said to have arisen under federal law when the plaintiff brings the case to enforce a right of action created by federal law, or when "under orderly rules of pleading and proof the plaintiff, as part of his case in chief, must establish the correctness and applicability of a proposition of federal law in order to prevail." Paul M. Bator, et al., Hart and Wechsler's The Federal Courts and The Federal System 995–1007 (3d ed. 1988). When the plaintiff brings his or her suit as a declaratory judgment action, the essential jurisdictional issue does not change: the suit "arises under" federal law if a coercive action brought by either party to enforce his or her rights "would necessarily present a federal question." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 19, 103 S.Ct. 2841, 2851, 77 L.Ed.2d 420 (1983).

It is fundamental that, when deciding whether a case arises under a law, the

---

**2.** New Korhumel's opening brief on this issue is remarkable in its failure to state clearly the grounds on which New Korhumel asserts jurisdiction. If the bankruptcy court did err as to its jurisdiction, it was not in spite of New Korhumel's assistance. New Korhumel's reply brief is, by contrast, much clearer, although it adds numerous new arguments. Were it not for the questions at issue in this case—the fundamental power of the bankruptcy courts to judge cases properly within their jurisdiction—this court would have disregarded these arguments.

court must rest its decision on " 'what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.' " *Id.* at 10, 103 S.Ct. at 2846, quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914). New Korhumel's complaint for declaratory relief, as amended, alleges that the Trustee sold to New Korhumel many of Old Korhumel's assets, but only a few of Old Korhumel's liabilities. New Korhumel claims that these liabilities did not include those stemming from the operation of any implement or product manufactured or sold by Old Korhumel. New Korhumel thus sought a declaratory judgment that New Korhumel "is not liable to the Sudaus, or to any of them, or otherwise" by reason of Old Korhumel's manufacture and sale of its products "for any injuries to individuals occurring by reason of their use or operation by any party" of Old Korhumel products. New Korhumel also prayed for an injunction of enforcement of any judgment or any other attempt to fix Old Korhumel's liabilities on New Korhumel, as well as any other relief to which New Korhumel was entitled. Complaint, as amended, ¶¶ 10–11, 18.

The amended Complaint does not rest upon, nor does New Korhumel assert, a right of action created by Title 11. While New Korhumel's complaint hints that its dispute is with the Trustee over the terms of the sale of Old Korhumel's assets, the Complaint does not list a claim against the Trustee or Old Korhumel. New Korhumel's complaint is against the Sudaus and similarly situated individuals, and New Korhumel has not directed the court to anything in Title 11 which authorizes a cause of action against them.

**3.** New Korhumel's complaint also requires the court to construe the bill itself. The construction of the bill of sale is a matter of federal law, as it reflects the act of a person appointed by a federal court, the Trustee, to conduct a sale pursuant to a federally approved Plan of Reorganization. Sales of assets of a bankrupt's estate pursuant to the order of the federal court are governed by federal law. See, for example,

New Korhumel does contend, however, that its case is of the second variety of "arising under" case: an instance where it will have to establish the correctness and applicability of a proposition within the law of Title 11 in its case in chief against the Sudaus. New Korhumel is in one sense correct. In order to decide whether to grant New Korhumel a declaratory judgment, the court will have to examine New Korhumel's bill of sale from the Trustee, which appears as Exhibit A to the amended Complaint. The Trustee's power to enter into this sale, and to alienate the property free and clear of all claims and interests of creditors of Old Korhumel, stems from Title 11. See 11 U.S.C. § 363(1) (1984 Supp.) (authorizing sale by trustee pursuant to valid plan of reorganization); *id.* at § 1141(c) (property of estate is free and clear of claims after confirmation of plan).[3]

The issue is not, however, whether this court will have to establish the correctness and applicability of Title 11 to afford New Korhumel declaratory relief. Rather, the test put forth in *Franchise Tax Bd.* is whether a "coercive action" brought either by New Korhumel or the Sudaus to enforce their respective rights would "necessarily present" a question under Title 11. The federal Declaratory Judgment Act does not extend the jurisdiction of the federal courts, but rather is procedural only. See *Franchise Tax Bd.,* 463 U.S. at 19, 15–17, 103 S.Ct. at 2851, 2849–50. Consistent with these principles, this court must examine the coercive actions each party could have brought, and determine if any of those actions would necessarily present a question under Title 11.

New Korhumel has not indicated to the court what coercive actions, if any, it could have brought against the Sudaus. The Sudaus' hypothetical cause of action,

*Ray v. Norseworthy,* 90 U.S. (23 Wall.) 128, 134–35, 23 L.Ed. 116 (1875) (authority to sell debtor's estate stems from bankruptcy court's power to administer and settle the estate; applies federal law to determine conditions of sale). Nevertheless, the process of construing the bill is fundamentally a matter of federal common law, not Title 11—even though the bill incorporates language taken from Title 11.

by contrast, is easily imagined; in fact, the Sudaus brought an action similar to it in the Michigan courts: a negligence, breach of warranty, and strict products liability suit. This case probably would be subject to Michigan law, as that is where the Sudaus' injury occurred. In order to obtain damages from New Korhumel under these theories, the Sudaus would have to demonstrate that (1) New Korhumel owed them a legal duty; (2) New Korhumel breached this duty; (3) the breach caused the Sudaus injury; and (4) they suffered damage. See *Connelly v. Paul Ruddy's Company,* 388 Mich. 146, 150, 200 N.W.2d 70, 72 (1972) (listing elements of tort theories); *Cova v. Harley Davidson Motor Company,* 26 Mich.App. 602, 182 N.W.2d 800 (1970) (elements of suit for breach of express or implied warranty similar to those in strict products liability suit).

The Sudaus would not have to present an issue under Title 11 in order to make out the second, third, and fourth elements of their prima facie case. Whether they would have to wrestle with such an issue to demonstrate that New Korhumel owed them a duty is a closer question. New Korhumel did not manufacture or sell the product which injured Nancy Sudau: a subsidiary of Old Korhumel did. New Korhumel would bear responsibility as successor to Old Korhumel under Michigan law[4] only if there is "continuity" between Old Korhumel and New Korhumel. See *Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 428, 244 N.W.2d 873, 883 (1976); *Langley v. Harris Corp.,* 413 Mich. 592, 593–97, 321 N.W.2d 662, 664–65 (1982).

The Michigan Supreme Court has mandated "guidelines" for all courts which consider the question of whether there is continuity between two firms sufficient to create liability for the successor firm under Michigan law. These factors are: (1) the degree to which the successor continues " 'the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations' "; (2) whether " '[t]he seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible' "; (3) whether the successor " 'assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation' "; and (4) whether the successor holds itself out to the world "as the effective continuation of the seller corporation." *Turner,* 244 N.W.2d at 879, 883–84, quoting *Shannon v. Samuel Langston Co.,* 379 F.Supp. 797, 801 (W.D.Mich.1974).

The first, second, and fourth factors are essentially factual ones, as *Tucker* and other Michigan cases applying *Tucker* demonstrate. See, for example, *Haney v. Bendix Corp.,* 88 Mich.App. 747, 279 N.W.2d 544 (1979); *Powers v. Baker–Perkins, Inc.,* 92 Mich.App. 645, 285 N.W.2d 402 (1979); *Lemire v. Garrard Drugs,* 95 Mich.App. 520, 291 N.W.2d 103 (1980); *Pelc v. Bendix Machine Tool Corp.,* 111 Mich.App. 343, 314 N.W.2d 614 (1981). The third element, by contrast, encompasses both factual and legal questions. Whether a particular liability is "ordinarily necessary for the uninterrupted continuation of normal business operations" is a factual question; whether the successor company has assumed the liability is a legal one.

It is the latter part of *Tucker's* third factor which raises a question of Title 11 law in this case. *Pelc* demonstrates how this is so. In *Pelc,* a subsidiary of Bendix Machine Tool Corporation purchased various assets of a bankrupt machine tool company from a bankruptcy trustee, pursuant

---

**4.** The court focuses here only on what the Sudaus would have to prove in their case in chief. New Korhumel's defenses under Michigan or federal law are irrelevant to the analysis of "arising under" jurisdiction, for a defense seldom results in federal jurisdiction. See *Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (plaintiff cannot use possibility that defendant will interpose defense under federal law to assert "arising under" jurisdiction); *Franchise Tax Bd.,* 463 U.S. at 16, 103 S.Ct. at 2849, quoting Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, 10A Federal Practice and Procedure § 2767 (2d ed.1983) (" 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.' ").

to a plan of liquidation. The subsidiary purchased these assets over four years before one of the bankrupt's former products injured Gary Pelc. Pelc sued Bendix, seeking to recover on theories of negligence, breach of implied warranty, and failure to warn. *Pelc*, 314 N.W.2d at 615–17.

Pelc unsuccessfully attempted to demonstrate that there was continuity between the bankrupt's operations and Bendix's under *Turner*. The *Pelc* court applied the four *Turner* factors to the facts of the case in a straightforward manner. When it applied the third factor, the court noted that Bendix had not assumed any liabilities and obligations of the bankrupt which were necessary to continue the bankrupt's normal operations. The court relied on a sales agreement between the bankruptcy estate and Bendix's subsidiary for the bankrupt's drawings, plans, patents, and trademarks— the assets most closely related to Pelc's claims. The agreement stated that the assets were sold free and clear of liens, claims, and encumbrances. *Id.* at 619, 616 & n. 1.

The *Pelc* court expressly declined to address the issue of whether the Supremacy Clause of the Constitution, art. VI, cl.2, shielded Bendix from liability for tort claims relating to assets which it had purchased from a trustee in a federal bankruptcy proceeding. *Id.* at 620. The *Pelc* court also did not expressly address the questions of whether the trustee had the right to sell the bankrupt's assets to Bendix, or what the terms of the sale meant. The court assumed that the answer to the first question was yes, and that the conditions of the sale were plain. Nevertheless, these are questions which plaintiff Pelc implicitly raised in his prima facie case— questions which, as noted *supra* at 922, arise under Title 11.

New Korhumel's suit thus arose under Title 11, and so the bankruptcy court had subject-matter jurisdiction over it. The two cases on which the bankruptcy court relied are not to the contrary. In *Sanborn II*, the bankruptcy trustee sold real estate of the debtor to Robert Kent, who encountered problems in obtaining rent from a tenant who occupied the land prior to the sale. Kent went to the bankruptcy court, and asserted that because the real estate once had been property of the bankrupt debtor, the bankruptcy court had jurisdiction to resolve the rent dispute. The court agreed and ruled that Kent was entitled to a rent which was higher than what the tenant was paying. On appeal, however, the Seventh Circuit ruled that this judgment was incorrect, holding that the bankruptcy court lacked jurisdiction over property of the estate once it had been sold, if the property itself was the sole basis for the bankruptcy court's jurisdiction. See *Sanborn II*, 794 F.2d at 1184–85. Here, New Korhumel does not suggest that the bankruptcy court has jurisdiction solely on account that New Korhumel holds some of Old Korhumel's former assets. Rather, New Korhumel alleges jurisdiction on account of its dealings with the Trustee, dealing which a suit by the Sudaus would call into question.

*Xonics* does not work to oust the bankruptcy court of jurisdiction either. The Seventh Circuit in that case recognized that in certain instances a bankruptcy court would have jurisdiction over a case involving property once the estate no longer had claims to that property—particularly where the estate's actions with respect to its former property affected the estate's creditors. See *Xonics*, 813 F.2d at 132. The analogous case here would be if resolution of the quality of New Korhumel's title to its purchased assets affected the value of Old Korhumel's estate—a possibility if New Korhumel sought indemnification from the estate for claims which were attached to the purchased assets without New Korhumel's consent. Indemnification would reduce the value of the estate, and thereby affect Old Korhumel's creditors.

Having decided that the bankruptcy court had jurisdiction over New Korhumel's suit, this court must address whether the bankruptcy court properly dismissed Old Korhumel and the Trustee from that suit. The bankruptcy court found that since the Trustee had sold Old Korhumel's assets, and since the Sudaus had no claims

against the Trustee or Old Korhumel, the Trustee and Old Korhumel should not have been parties to New Korhumel's suit. The Trustee and Old Korhumel never framed their motions to dismiss, however, in exactly these terms. Throughout the proceedings below they contended that because New Korhumel had no complaint against them, the court lacked *jurisdiction*—a proposition which the Supreme Court rejected in *Bell v. Hood*, 327 U.S. 678, 681–84, 66 S.Ct. 773, 775–77, 90 L.Ed. 939 (1946) (federal courts have jurisdiction over ultimately non-meritorious claims if complaint states requisites for federal jurisdiction, unless claims are insubstantial or frivolous). Nevertheless, the bankruptcy court accepted the Trustee and Old Korhumel's argument that New Korhumel had no claim against them, which prompted New Korhumel's request for leave to amend its complaint to state a claim against the Trustee. In that motion, New Korhumel argued (albeit in an offhand manner) that the Trustee was a necessary party to a suit involving the construction of his bill of sale of Old Korhumel's assets.[5]

In order to avoid "a partial disposition of a controversy, all persons who have an interest in the determination of the questions raised in the declaratory judgment suit should be before the court." *Diamond Shamrock Corp. v. Lumberman's Mutual Cas. Co.*, 416 F.2d 707, 711 (7th Cir.1969). Having all interested parties before the court allows for a full disposition of the matter, which fulfills one of the purposes of declaratory judgment actions. See *id.* Thus, while New Korhumel's amended Complaint did not state a claim against Old Korhumel and the Trustee—a conclusion of the bankruptcy court which New Korhumel never challenges—the Complaint properly included Old Korhumel and the Trustee as necessary parties to the controversy which New Korhumel's suit raised: what were the terms of New Ko-

rhumel's purchase of Old Korhumel's assets? The bankruptcy court suggested that this was not a proper subject for a declaratory action, since in essence New Korhumel sought a determination of its rights with respect to the Sudaus, and not to the Trustee or Old Korhumel. Yet the precise determination which New Korhumel sought certainly would have affected the rights of the Trustee and Old Korhumel. If New Korhumel obtained the declaration which it sought, the Sudaus would have had no choice but to proceed (in all likelihood, unsuccessfully) against Old Korhumel and the Trustee.

Even if this court were to accept the bankruptcy court's reasoning that this suit did not involve the rights of the Trustee and Old Korhumel, that would not make New Korhumel's suit improper. Section 2201 allows a party to seek a declaratory judgment "[i]n a case of actual controversy" within the court's jurisdiction. 28 U.S.C. § 2201. The statute does not limit the parties to this controversy; it requires only that the controversy be "actual" and within the jurisdiction of the court. Section 2201 goes on to state that the court "may declare the rights and other legal relations of *any* interested party seeking such a declaration, whether or not further relief is or could be sought." (emphasis added) It is undisputed that there was an actual controversy between New Korhumel and the Sudaus, and that New Korhumel and the Sudaus were interested parties. This court has concluded that the bankruptcy court had jurisdiction over this suit, and thus the bankruptcy court erred in deciding that New Korhumel did not state a proper action for declaratory judgment against the Sudaus. The bankruptcy court erred further in rejecting New Korhumel's argument that the Trustee and Old Korhumel were necessary parties to this action. This court thus must reverse the bankruptcy

---

**5.** New Korhumel did not present this argument on appeal until it filed its reply brief. At the same time New Korhumel argued that Old Korhumel also was necessary to the declaratory judgment action. Usually the court would disregard such an argument, especially where the party offering it failed to indicate whether it

had raised the argument to the court below. See *Ippolito v. WNS, Inc.*, 864 F.2d 440, 455 n. 12 (7th Cir.1988). However, Old Korhumel and the Trustee share the same counsel, and are in a similar position on this argument, so the court properly discusses the necessity of having both parties in the declaratory judgment suit.

court's dismissal orders and remand this case to the bankruptcy court.

New Korhumel argues that while the bankruptcy court is deciding whether New Korhumel is entitled to a declaratory judgment, it should also permit New Korhumel to amend its complaint in order to allow New Korhumel to ask for rescission of the sale of Old Korhumel's assets or, alternatively, indemnification from Old Korhumel in the event that New Korhumel is liable to the Sudaus. The bankruptcy court denied this motion to amend, noting that amendment was inappropriate in light of the dismissals which it entered on June 10, 1988. The court noted further that the amendment introduced new issues which were better raised in a separate proceeding.

The rule governing amendment of complaints in adversary proceedings is Bankr.R. 7015, which states that Rule 15, Fed.R.Civ.P., applies. Rule 15(a) allows a party to amend its pleading once as a matter of course before an opponent answers the complaint; once an opponent has served a responsive pleading, the party may amend "only by leave of court or by written consent of the adverse party; and leave of the court shall be freely given when justice so requires." The decision to grant an amendment under Rule 15(a) is left to the discretion of the trial court, see *Ippolito v. WNS, Inc.*, 864 F.2d 440, 454 (7th Cir.1988), and is reviewable as such. The problem with reviewing the bankruptcy court's decision in this case is that this court has reversed one of the stated grounds for the bankruptcy court's decision. This court is not confident that the court below would have denied amendment had it been aware that it had jurisdiction over New Korhumel's claims, and that Old

Korhumel and the Trustee were necessary parties to the action. This court will thus vacate the bankruptcy court's order denying amendment and remand the decision to the bankruptcy court for reconsideration in light of this court's opinion.

*El–Sorrogy Adversary Proceeding*

The Korhumel Group appeals the decision of the bankruptcy court in dismissing El–Sorrogy's complaint for lack of jurisdiction once the court had approved the settlement of El–Sorrogy's claims against Old Korhumel. The Group complains that it had wrestled with El–Sorrogy for six years, and even had filed motions for summary judgment; the dismissal leaves the Group feeling unvindicated.[6] The Korhumel Group's argument consumes only one page of its brief, and is devoid of references to any precedents which indicate that the bankruptcy court erred.[7] The Group's sole argument—apart from a demand that they have their day in court—is that despite the dismissal of El–Sorrogy's claims against Old Korhumel, the matter continued to be "related" to Old Korhumel's bankruptcy, and thus the bankruptcy court had jurisdiction over El–Sorrogy's claims against the Korhumel Group.

This court will infer from the Korhumel Group's offhand comment that El–Sorrogy's claims against them "relate to" the Old Korhumel bankruptcy as an argument that the bankruptcy court would have had jurisdiction over this matter pursuant to 28 U.S.C. § 157(c)(1) (1984 Supp.), which grants the bankruptcy courts the power to hear "a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11."[8] The Seventh Circuit in *Xonics* defined the phrase "related to" as encompassing only those disputes which

**6.** The motions for summary judgment must have frightened El–Sorrogy, as he chose not to oppose the Korhumel Group on appeal.

**7.** The Korhumel Group's reply brief scarcely does better, although it adds the argument that jurisdiction in the El–Sorrogy matter was never an issue. This of course is incorrect. Jurisdiction is *always* an issue for a court. The bankruptcy court is under the same obligation as this court to dismiss a case whenever it appears to it that it lacks subject-matter jurisdiction. See Rule 12(h)(3), Fed.R.Civ.P. ("Whenever it appears by suggestion of the parties or otherwise

that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); Bankr.R. 7012(b) (applying Rule 12(h)(3) to adversary proceedings).

**8.** Normally the bankruptcy court acts in these cases merely as an advisor, proposing factual findings and legal conclusions to the district court for entry of all final orders and judgments in the case. See 28 U.S.C. § 157(c)(1). Upon consent of the parties, the bankruptcy court itself can issue these orders and judgments. See *id.* at § 157(c)(2). Neither party has raised the interesting question of whether consent is neces-

affect payments to the bankrupt's creditors or the administration of the bankrupt's estate. See *Xonics*, 813 F.2d at 131. The Korhumel Group has presented no arguments explaining how El–Sorrogy's claims against the Group affect Old Korhumel's creditors or the administration of Old Korhumel's estate, and thus the court will treat this argument as waived. The court thus affirms the decision of the bankruptcy court to dismiss El–Sorrogy's claims against the Korhumel Group for lack of jurisdiction.

## CONCLUSION

The decision of the bankruptcy court in adversary proceeding No. 87 A 941, appeal No. 88 C 7536, dismissing New Korhumel's suit for declaratory judgment is REVERSED. The court's decision denying New Korhumel's motion to amend its complaint is VACATED and REMANDED to the bankruptcy court for reconsideration in light of this opinion. The decision of the court in adversary proceeding No. 82 A 2023, appeal No. 88 C 7716, dismissing El–Sorrogy's claims against the Korhumel Group is AFFIRMED.

---

sary for the bankruptcy court to issue final orders when a case converts from a core proceeding—one not requiring the parties' consent—to a non-core proceeding in the middle of the proceeding, as may have happened here. The court thus leaves the question for another occasion.