James Allen TRIMPER, Plaintiff,

v.

BRUNO–SHERMAN CORPORATION, Bruno Machinery, Bruno-Sheridan Corporation, Successor in interest to T. W. & C. B. Sheridan Company, Defendants.

Civ. No. 76–72107.

United States District Court, E. D. Michigan, S. D.

Aug. 25, 1977.

Jared P. Buckley, Zeff & Zeff, Detroit, Mich., for plaintiff.

Richard J. Tonkin, Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The plaintiff, James Allen Trimper, was injured while using a press and brings this products liability action to recover damages, pursuant to the court's diversity jurisdiction. The motion for summary judgment requires this Court to make a determination under Michigan law with respect to the scope of the products liability doctrine created by the Michigan supreme court in *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976).

The expansive nature of liability concepts in products liability cases in Michigan is not only demonstrated by the majority rule in *Turner*, but it is foretold by the introductory language wherein the court said:

> "Products liability law is a fast-developing area. All the rules have not yet been formulated and products liability law, as it matures, has to shake off various impediments associated with traditional concepts, which, while relevant to other problems, are inappropriate for this new area." *Id.* at 416, 244 N.W.2d at 877.

On October 9, 1973, the plaintiff, while an employee of Fabricon, Inc. in River Rouge, Michigan, was injured on a Sheridan press. The press had been manufactured by T. W. & C. B. Sheridan Company and had been sold by T. W. & C. B. Sheridan Company to Fabricon, Inc. sometime prior to 1964.

In 1964 there was a sale of assets from T. W. & C. B. Sheridan Company to Harris Intertype Corporation. This is the sale which is explained in detail in *Turner, supra.* On September 6, 1970, there was a sale of certain assets from Harris Intertype Corporation to Bruno-Sherman Corporation. Unlike the situation in *Turner*, the corporate transferor in the case at bar continued its operation in other fields. The critical incidents of this sale may be summarized as follows. The buyer purchased as a going business the seller's business of manufacturing and selling die cutting products, consisting of die cutting presses known as "the Sheridan Die-Cutting press". The sale included good will, historical data, business records, external correspondence with customers, trade secrets, patents, trademarks, designs, patterns, jigs, fixtures, and equipment which relate solely to the manufacture or sale of die cutting presses. The seller was required to forward to the buyer all inquiries relating to such business for a period of five (5) years. The contract of sale also included a ten-year non-competition clause; provided for training of the buyer's employees and for providing technical assistance; and anticipated that for a period of up to five (5) years presses manufactured by the buyer could contain the following name: "Sheridan Die Cutting Press manufactured by Bruno-Sherman Corporation."

It is the opinion of the Court that, as in the *Turner* decision, the totality of the transaction outlined above demonstrates a basic continuity of the die cutting press enterprise.

This suit was commenced in this court on October 12, 1976. On May 13, 1975, the same plaintiff commenced an action in Wayne County Circuit Court against Harris Corporation [Harris Intertype Corporation], which was removed to this court as our Case Number 75–71774.

In the suit against Harris Corporation the Court denied the defendant's motion for summary judgment. It should be noted, however, that the Harris Corporation did not raise as an issue the possibility that its vicarious liability, recognized in *Turner, supra*, may have terminated with respect to future accidents, by virtue of its transfer of assets to Bruno-Sherman Corporation. Ultimately, it may be necessary to determine whether, under the circumstances, there is continuing liability of Harris Corporation; but at the present time the Court is concerned only with the potential liability of Bruno-Sherman Corporation, the defendant in this suit.

While the Michigan supreme court has not yet established the outer limits of the *Turner* doctrine, certain conclusions about the thrust of developing Michigan law can be reached from a careful examination of the *Turner* decision.

The nature of *Turner*-type liability is clear. It is non-statutory, non-voluntary, classic vicarious liability.

The doctrine of vicarious liability has been well described as follows:

"Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of another. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another." *Nadeau v. Melin*, 260 Minn. 369, 375, 110 N.W.2d 29, 34 (1961).

The unavailability of T. W. & C. B. Sheridan Company as a collectible defendant provided the necessity and incentive for imposing vicarious liability on the original maker's successor in economic function,[*] but it did not provide a rational legal basis for such liability. The Michigan supreme court found the rational legal basis for vicarious liability in Harris in estoppel by reason of the voluntary creation of the image of continuity of the manufacturing enterprise, and, perhaps by inference, in the implied reliance thereon in the users of the offending machine.

"Because this is a products liability case, however, there is a second aspect of continuity which must also be considered. Where the successor corporation represents itself either affirmatively or, by omitting to do otherwise, as in effect a continuation of the original manufacturing enterprise, a strong indication of continuity is established. *Justice would be offended if a corporation which holds it-*

*self out as a particular company for the purpose of sales, would not be estopped from denying that it is that company for the purpose of determining products liability.* This was recognized in another context in the Restatement Torts, 2d, § 400, which decrees that '[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer'. See *Ray v. Alad Corp., supra* 127 Cal.Rptr. 817 (Cal.App.1976); *Ortiz v. South Bend Lathe*, 46 Cal.App.3d 842, 120 Cal.Rptr. 556, 560, 561 (1975) (Fleming, J., dissenting); *cf. Shane v. Hobam, Inc*, 332 F.Supp. 526, 530 (E.D.Pa.,1971); *Bathory v. Procter & Gamble Distributing Co.*, 306 F.2d 22 (C.A.6, 1962)." 397 Mich. at 426–427, 244 N.W.2d at 882 (emphasis added).

There is no less reason for imposing such vicarious liability on Bruno-Sherman Corporation in this case than on Harris Corporation in *Turner*. In fact, the reasons are precisely the same.

For the foregoing reasons, the motion will be denied.

---

[*] For an evaluation of the policy considerations which should be weighed before imposing such liability, see Juenger and Schulman, *Assets Sales and Products Liability*, 22 Wayne L.Rev. 39 (1975).