## HANEY v BENDIX CORPORATION

Docket No. 77-4530. Submitted December 21, 1978, at Detroit.—Decided March 6, 1979.

Paul Haney and Maxine Haney brought an action against Bendix Corporation, Thiokol Corporation, H. K. Porter Company, Inc., and World Bestos, Inc., for damages. Plaintiff Paul Haney alleges that World Bestos supplied his employer with asbestos products and that he contracted asbestosis resulting from inhalation of asbestos fibers. World Bestos moved for summary judgment on the ground that it was a transferee corporation which acquired the World Bestos organization after Haney allegedly was injured, and was, therefore, not liable. The motion was denied, Wayne Circuit Court, James Montante, J., and World Bestos appeals by leave granted. *Held:*

The test for determination of the liability of a successor corporation is the continuity of the enterprise. In this case the World Bestos enterprise was essentially a continuation of an established business. Because continuity of the enterprise was shown, the motion for summary judgment was properly denied.

Affirmed.

1. CORPORATIONS — TORTS — SUCCESSOR CORPORATIONS — CONTINUITY OF ENTERPRISE.

   A purchaser of corporate assets for cash, that is, a successor corporation, may be held liable for torts committed by the seller corporation where the totality of the transaction demonstrates a basic continuity of the enterprise.

2. CORPORATIONS — TORTS — SUCCESSOR CORPORATIONS — CONTINUITY OF ENTERPRISE.

   Guidelines for use in determining whether sufficient continuity exists for the imposition of tort liability upon a successor corporation include: (1) whether there is a continuation of the enterprise of the seller corporation, including management, personnel, physical location, assets, and general business operations; (2) whether the seller corporation ceases its ordinary

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 19 Am Jur 2d, Corporations § 1427 *et seq.*

business operations, liquidates, and dissolves as soon as possible; and (3) whether the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the continuation of normal business operations of the seller corporation.

*Goodman, Eden, Millender & Bedrosian* (by *Robert A. Koory*), for plaintiffs.

*Butzel, Long, Gust, Klein & Van Zile* (by *Delmer C. Gowing, III,* and *D. Stewart Green*), for defendant World Bestos, Inc.

Before: M. F. CAVANAGH, P.J., and BASHARA and ALLEN, JJ.

BASHARA, J. Defendant, World Bestos, Inc., appeals from a denial of its motion for summary judgment. Plaintiffs allege that defendant manufactured and supplied Kelsey-Hayes with brake linings which contained asbestos fibers. Plaintiff Paul Haney claims inhalation of these fibers during his employment with Kelsey-Hayes from 1952-1973 resulted in his contracting asbestosis for which he now seeks compensation from the defendant.

Defendant moved for summary judgment on the grounds that as a mere transferee which acquired World Bestos after the plaintiff's employment with Kelsey-Hayes had terminated and after the alleged injury is claimed to have occurred, it was a corporate stranger to the manufacturer and therefore not liable.

A brief background of the World Bestos Corporation will help clarify the legal issue presented here. World Bestos was acquired by Firestone Tire & Rubber Co. in 1933-1934. It was incorporated in 1938 for the manufacture and sale of asbestos parts. In 1968, it became a division of Firestone,

and in 1975, defendant entered into an agreement to take control of World Bestos.

"New" World Bestos was incorporated to receive the assets of "old" World Bestos and to continue the manufacture and sale of asbestos products. As part of the agreement, defendant took over the entire plant facilities, equipment and machinery, inventory and patents of "old" World Bestos.

Approximately 90% of the production force, 90% of the sales force and 50% of management remained with "new" World Bestos, which continued the contracts necessary for the daily operation of the business and filled customer orders outstanding as of the date of the agreement. Defendant also received an assignment of Firestone's contractual rights. The asbestos products division of Firestone was then dissolved.

This case necessitates a determination of the scope of the products liability doctrine enunciated by the Michigan Supreme Court in *Turner v Bituminous Casualty Co,* 397 Mich 406; 244 NW2d 873 (1976).

Defendant argues that *Turner* requires the transferor corporation be defunct before liability for defective products can be extended to the transferee corporation.

Plaintiff claims liability attaches regardless of the status of the original corporation, the existence of continuity being the basis for successor liability.

The case at bar and *Turner* are factually analogous. However, in *Turner,* the assets of the manufacturer were transferred to the successor and the original company completely dissolved prior to the injury.

The Supreme Court opinion in *Turner,* based on tenets of tort liability, found a purchaser of corpo-

rate assets for cash liable where the totality of the transaction demonstrated a basic continuity of the enterprise.

As the Court stated:

"Under such circumstances to say Old Sheridan is a stranger to New Sheridan, and vice versa, is to honor form over substance. The natural purpose of New Sheridan was to incorporate Old Sheridan into its system with as much the same structure and operation as possible. *Continuity is the purpose, continuity is the watchword, continuity is the fact." Turner* at 426. (Emphasis supplied.)

In setting guidelines to establish whether continuity exists, the Court adopted the first, third, and fourth criteria of the stated requirements of a de facto merger as set forth in *Shannon v Samuel Langston Co,* 379 F Supp 797, 801 (WD Mich, 1974):

"(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

\*    \*    \*

"(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

"(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation."

We do not interpret *Turner* as standing for the proposition that plaintiff establish a de facto merger before successor liability attaches. Rather the stated requirements are only guidelines.

The availability of the transferor corporation is simply a factor in determining continuity. It is not an independent prerequisite to the imposition of liability. Continuity and dissolution may be the prerequisites when a de facto merger is involved. When a sale of assets for cash is involved, continuity alone is the test.

Successor corporation liability was established for a larger purpose than to simply allow consumer recovery in the singular case where there is no alternative source.

The recent case of *Trimper v Bruno-Sherman Corp*, 436 F Supp 349 (ED Mich, 1977), supports our interpretation. There the court, using a vicarious liability analysis, found the successor corporation liable even though the predecessor corporation was still in existence. In analyzing *Turner*, Judge Churchill noted:

"The unavailability of T. W. & C. B. Sheridan Company as a collectible defendant provided the necessity and incentive for imposing vicarious liability on the original maker's successor in economic function, but it did not provide a rational legal basis for such liability. The Michigan supreme court found the rational legal basis for vicarious liability in Harris in estoppel by reason of the voluntary creation of the image of continuity of the manufacturing enterprise, and, perhaps by inference, in the implied reliance thereon in the users of the offending machine." *Trimper* at 351.

Determinations of successor liability based on continuity and judged by the specific stated criteria in *Turner* will, in the long run, assure uniform extension of liability thus avoiding surprise and conjecture.

Affirmed, costs to plaintiffs.