Janet THOMPSON, Conservator of the Estate of David Thompson, an Incapacitated Person, Plaintiff,

v.

MOBILE AERIAL TOWERS, INC., an Indiana corporation, Specialized Equipment Leasing, Inc., an Indiana corporation, Brant Leasing, Inc., a Pennsylvania corporation, HRI Liquidating Corporation f/k/a Hi–Ranger, Inc., a Wisconsin corporation, Simon–Telelect, Inc., a Delaware corporation, and Teco, Inc., an Indiana corporation, Jointly and Severally, Defendants,

and

Teco, Inc., an Indiana corporation, Cross–Plaintiff,

v.

HRI LIQUIDATING CORPORATION, f/k/a Hi–Ranger, Inc., a Wisconsin corporation, Simon–Telelect, Inc., a Delaware corporation, Specialized Equipment Leasing, Inc., an Indiana corporation, Cross–Defendants,

and

Brant Leasing, Inc., a Pennsylvania corporation, Cross–Plaintiff,

v.

SPECIALIZED EQUIPMENT LEASING, INC., an Indiana corporation, HRI Liquidating Corporation, f/k/a Hi–Ranger, Inc., a Wisconsin corporation, and Simon–Telelect, Inc., Delaware corporation, and Teco, Inc., an Indiana corporation, jointly and severally, Cross–Defendants.

No. 92–CV–74193–DT.

United States District Court, E.D. Michigan, Southern Division.

July 11, 1994.

Jeffrey H. Feldman, Southfield, MI, for plaintiff.

William D. Shailor, Farmington Hills, MI, for defendant Mobile Aerial Towers.

Thomas Rinehart, Mt. Clemens, MI, for defendant Brant Leasing.

John L. Collins, Lansing, MI, for defendant Specialized Equipment.

James N. Martin, Mt. Clemens, MI, for defendant Simon–Telelect, Inc.

Gerard J. Andree, Southfield, MI, for defendant HRI Liquidating.

*ORDER GRANTING DEFENDANT HRI LIQUIDATING CORPORATION'S AND DEFENDANT SIMON–TELELECT INC.'S MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING CROSS–CLAIMS FILED BY CROSS–PLAINTIFF TECO, INC. AND CROSS–PLAINTIFF BRANT LEASING, INC. AGAINST CROSS–DEFENDANT HRI LIQUIDATING CORPORATION AND CROSS–DEFENDANT SIMON–TELELECT, INC.*

HACKETT, District Judge.

This products liability action was filed on behalf of David Thompson, who sustained injuries rendering him a quadriplegic allegedly as a result of a defective "Hi–Ranger" bucket truck. Plaintiffs have brought claims of negligence and breach of warranty against defendant HRI Liquidating Corporation (HRI) and defendant Simon–Telelect Inc. (Simon–Telelect) under the theory of successor liability. Defendants HRI and Simon–Telelect seek summary judgment on the grounds that they are not successors-in-interest to Mobile Aerial Towers (MAT). For the reasons stated below, the motions for summary judgment filed by HRI and Simon–Telelect shall be granted and cross-claims for indemnification against HRI and Simon–Telelect shall be dismissed.

## FACTS

David Thompson was employed by Bob's Lawn and Garden as a tree trimmer. On December 18, 1991, David Thompson was working in a "Hi–Ranger" bucket truck trimming a tree when the vehicle's controls malfunctioned. Unable to lower the vehicle's bucket, Thompson attempted to get down by climbing down the tree. A branch of the tree gave way and Thompson fell to the ground sustaining serious injuries which have left him a quadriplegic. Plaintiff Janet Thompson brought this action as conservator of the Estate of David Thompson, an incapacitated person.

The bucket truck at issue, which is also known as a cherry picker, was designed and manufactured by defendant MAT in 1975. MAT registered the bucket truck under the

trademark "Hi–Ranger." MAT is now in bankruptcy proceedings and the action has been stayed as to MAT. Plaintiff alleges defendant HRI is liable under the theory of successor liability. In 1982, HRI purchased assets of MAT including the "Hi–Ranger" trademark and assumed the business of manufacturing bucket trucks with the "Hi–Ranger" logo. The purchase agreement provided that HRI would purchase the entire business including goodwill, customer lists, corporate name, trademarks and the trademark name "Hi–Ranger," and assets of MAT. HRI moved the equipment it purchased to Wisconsin, installed new management, did not recognize the MAT labor agreements, and established a new dealer and network distribution system. From 1982 to 1986, MAT did not manufacture any product, but held cash assets. In 1986, MAT was recapitalized and began acting as a distributor for the "Hi–Ranger" product line in several states in the mid-west of the United States. MAT continued to hold cash assets until it filed for bankruptcy on November 10, 1992. MAT filed for bankruptcy after this action was filed in state court in June, 1992 and removed to this court in July, 1992.

After this lawsuit was filed, HRI sold assets to defendant Simon–Telelect on August 5, 1992. The purchase agreement between HRI and Simon–Telelect provided that Simon–Telelect was not liable for any product manufactured by MAT or for any product claim against it. Defendants HRI and Simon–Telelect seek summary judgment on the grounds that they are not successors-in-interest to MAT and cannot be held liable for the allegedly defective bucket truck which was designed and manufactured by MAT.

## ANALYSIS

### A. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The United States Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

"[T]he standard for determining whether summary judgment is appropriate is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Booker v. Brown & Williamson Tobacco Co. Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

The United States Court of Appeals for the Sixth Circuit has held that trial courts considering a motion for summary judgment may not make findings of fact. The movant must conclusively show "that there exists no genuine issues as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n.,* 630 F.2d 1155, 1158 (6th Cir.1980) (citations omitted).

The substantive law governs the determination of which facts are material. "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that

there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## B. *SUCCESSOR LIABILITY*

■ In deciding defendant HRI Liquidating's motion for summary judgment, the court addresses whether defendant could, as a matter of law, potentially be held responsible under a theory of successor liability. Because jurisdiction is based on diversity, Michigan law controls the question of whether HRI Liquidating is a successor-in-interest for purposes of products liability. Under Michigan law, products liability may attach to a corporation which purchases the assets of the manufacturer where the totality of the acquisition demonstrates a continuity of the enterprise between the original manufacturer and the acquiring corporation. *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976). In *Turner*, the Michigan Supreme Court set forth three guidelines for courts to consider in determining whether a sufficient continuity of the enterprise exists to hold the acquiring corporation liable under the theory of successor liability:

1. There is a continuity of management, personnel, physical location, assets and general business operations of the selling corporation;

2. The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and,

3. The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Id.* at 429, 244 N.W.2d at 883.

■ Under the three factors set forth in *Turner, supra*, the court determines that HRI is not subject to successor liability because no continuity of enterprise exists. The court considers each factor below.

### 1. *Continuity of Enterprise*

The first factor the court considers is whether there is a continuity of management, personnel, physical location, assets, and general business operations. In this case, there was not a continuity of management. Only one officer of MAT, the former president, joined HRI Liquidating as vice president of marketing. Similarly, there was not a continuity of personnel. Of MAT's 100 to 200 employees, no more than 10 were employed by HRI. Moreover, HRI did not continue the labor agreements of MAT and no evidence has been presented suggesting that seniority rights or other benefits from their previous employment followed any of those employees. The physical location also changed. HRI moved all the equipment it purchased from Indiana to Wisconsin. Moreover, HRI did not continue the general business operations of MAT. HRI established a new dealer network and distribution system and started its own advertising campaign. Under the facts presented, there is no continuity of enterprise.

### 2. *Dissolution of Seller Corporation*

The second factor under *Turner* is whether the seller corporation has dissolved and liquidated as soon as possible after the sale. In this case, the manufacturer, MAT, did not dissolve after selling assets to HRI in 1982, but continued until it filed for bankruptcy in 1992. Plaintiff argues that Michigan courts have eliminated the second *Turner* element and no longer require that the seller corporation dissolve to find continuity of enterprise. Plaintiffs rely on *Haney v. Bendix Corp.*, 88 Mich.App. 747, 279 N.W.2d 544 (1979) to support their argument. Contrary to plaintiffs' argument, *Haney* does not state that dissolution of the seller corporation is no longer a factor, but merely states that it is but one factor, and standing alone it is not dispositive. *Id.* at 751, 279 N.W.2d at 546. Furthermore, Michigan courts have continued to consider whether the transferor corporation liquidated after selling its assets to the acquiring corporation in determining whether successor liability exists. *See e.g. Pelc v. Bendix Machine Tool Corp,* 111 Mich. App. 343, 314 N.W.2d 614 (1981). In this

case, MAT did not dissolve after selling assets to HRI, thus the second *Turner* factor is not met.

### 3. *Assumption of Liabilities*

The third factor is whether the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. In the 1982 agreement, HRI assumed liabilities arising out of "any claims or actions alleging defects or negligence in design or manufacture or products shipped by MAT prior to the closing date" with the exception that HRI did not agree to pay for any liability against which MAT was insured. HRI contends that MAT was insured for this claim under a policy provided by Fireman's Fund. Plaintiffs do not dispute that MAT was insured for their claims presented in this case. Furthermore, HRI and MAT amended the purchase agreement in 1986 when HRI became a distributor for HRI. In the amended 1986 agreement, HRI specifically disclaimed any liability for uninsured products liability claims based upon products manufactured or shipped prior to the closing date of the transaction. That agreement provides:

> Mobile [MAT] and Hi–Ranger [HRI] hereby agree to amend Section 1.2(ii) of the [1982] Agreement to limit the liabilities and obligations of Mobile [MAT] assumed by Hi–Ranger pursuant to that provision. Specifically, the liabilities or obligations as defined therein "based upon or arising out of any claims or actions alleging defects or negligence in design or manufacture of products manufactured or shipped by MAT prior to the Closing Date, including product liability claims arising out of transactions, or resulting in injuries, alleged injuries, accidents or other event occurring prior to the Closing Date, whether or not filed against or made known to MAT prior to the Closing Date" are hereby agreed to be obligations and liabilities which are not assumed by Hi–Ranger.

As a result of the 1982 and 1986 agreements, HRI did not assume the liabilities and obli-

gations of MAT sufficient to show a continuity of enterprise.

### 4. *Purchasing Corporation Holds Itself Out As Seller Corporation*

In addition to the three guidelines enumerated in *Turner*, in deciding whether successor liability attaches, Michigan courts have often considered whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation. Plaintiff argues that liability should attach to HRI in this case because HRI allegedly held itself out to the world as the continuation of MAT. Plaintiff bases its argument on the fact that HRI sent notice to MAT's customers of its "new" address. HRI, on the other hand, argues that its advertising campaign distinguished itself from MAT and promoted itself as a "new corporation" not a continuation of the old MAT. In addition, HRI developed its own dealer network and distribution system and moved all equipment to a new plant in a different state. Under these circumstances, the court finds that HRI did not hold itself out to the world as a continuation of MAT, but as a new corporation.

Furthermore, in *Pelc v. Bendix Machine Tool Corp.*, 111 Mich.App. 343, 314 N.W.2d 614 (1981), the court stated that even where the purchasing corporation affirmatively holds itself out to the world as the effective continuation of the selling corporation, imposition of liability is not justified absent additional evidence. The court stressed that the continuation of a product line standing alone would not satisfy the requirements for successor liability under Michigan law absent other evidence showing a continuity of the enterprise. *Id.* at 355, 314 N.W.2d at 619. The fact that HRI took over the business of manufacturing Hi–Ranger bucket trucks is not sufficient evidence upon which to hold HRI liable under the theory of successor liability. HRI did not continue the management, personnel, or physical location of MAT; MAT did not dissolve; and HRI did not assume the liabilities and obligations of MAT ordinarily necessary for the uninterrupted continuation of MAT. Accordingly, HRI can-

not be held liable as a matter of law under the theory of successor liability.[1]

Having decided that HRI is not a successor-in-interest to MAT and is not subject to products liability in this case, the court must necessarily find that Simon–Telelect is not a successor-in-interest to MAT and is not subject to products liability either. Simon–Telelect never purchased any assets from MAT, only from HRI. Because HRI is not a successor to MAT, there is no possibility that Simon–Telelect could be subject to successor liability. As HRI and Simon–Telelect are not subject to successor liability, there is no possibility that the remaining defendants could seek indemnification against them. Accordingly, cross-plaintiffs Teco, Inc.'s and Brant Leasing, Inc.'s cross-claims against HRI and Simon–Telelect must be dismissed. Thus, cross-defendants HRI's and Simon–Telelect's motions for summary judgment as to the cross-claims against them are moot and will not be addressed by the court.

### CONCLUSION

For the reasons stated above,

IT IS ORDERED that defendant HRI's motion for summary judgment hereby is GRANTED.

IT IS FURTHER ORDERED that defendant Simon–Telelect's motion for summary judgment hereby is GRANTED.

IT IS FURTHER ORDERED that the cross-claims filed by cross-plaintiff Teco, Inc. and cross-plaintiff Brant Leasing against cross-defendant HRI and cross-defendant Simon–Telelect for indemnification hereby are DISMISSED.

---

1. Because HRI is not subject to successor liability, the court does not reach HRI's argument that any alleged negligence or breach of warranty on the part of its successor, MAT, is not the proximate cause of plaintiff's injuries.