OPINION,
On August 6, 1997, Jason D. Wease was working for Nelson Tree Service. Mr. Wease was injured while he was standing on the ground next to the tree trimming truck. Allegedly, the injury was caused by a defect in the manufacture of the aerial boom which was attached to the tree trimming truck. Mr. Wease is currently in a vegetative state and resides in a nursing home.
The aerial boom in question was manufactured by Mobile Aerial Towers, Inc. In 1982, Hi-Ranger, Inc. purchased the business and assets of Mobile Aerial Towers, Inc. In 1986, Mobile Aerial Towers, Inc. and Hi-Ranger, Inc. entered into an agreement which modified and amended the 1982 agreement. In 1992, appellee, Terex Telelect, Inc., purchased the assets of Hi-Ranger, Inc. Appellee assumed liability for certain product liability claims.
On August 5, 1999, appellant, George Kasarda as legal guardian of Jason D. Wease, filed a complaint for negligence and strict liability in connection with the design, manufacture and/or sale of the aerial boom. Named in the complaint were appellee and others. A first amended complaint was filed on March 20, 2000. Nelson Tree Service is an appellant herein to assert any interest it may have for payment of workers' compensation benefits on behalf of Mr. Wease.
On February 14, 2000, appellee filed a motion for summary judgment. By judgment entry filed May 1, 2000, the trial court granted said motion.
Both appellants filed an appeal and this matter is now before this court for consideration. Both appellants' first assignment of error is essentially the same and is as follows:
 I THE TRIAL COURT ERRED BY GRANTING TEREX-TELELECT'S MOTION FOR SUMMARY JUDGMENT, AS TELELECT FAILED TO SUSTAIN ITS BURDEN OF PROVING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED.
Appellant Nelson Tree Service adds the following assignment of error:
 II THE TRIAL COURT ERRED BY FAILING TO STRIKE CECELIA NEUMANN'S AFFIDAVIT.
 I
Appellants claim the trial court erred in granting summary judgment to appellee. Specifically, appellants claim the trial court erred in finding that appellee had not de facto merged with Hi-Ranger, Inc. and that the 1992 agreement between Hi-Ranger, Inc. and appellee was not ambiguous.
Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule has recently been reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The WeddingParty, Inc. (1987), 30 Ohio St.3d 35.
Appellants advance two theories to place successor liability upon appellee. First, appellants argue the 1986 agreement between Mobile Aerial Towers, Inc. and Hi-Ranger, Inc. does not pass the "smell" test and was an attempt to fraudulently divest Hi-Ranger, Inc. from liability from Mobile Aerial Tower's products. Secondly, appellants argue the 1992 agreement between Hi-Ranger, Inc. and appellee fails the Flaugher v. Cone Automotive Machine Co. (1987), 30 Ohio St.3d 60, test in two regards: the 1992 agreement is ambiguous or the 1992 agreement was a de facto merger of the entities. We will attempt to review each of these theories separately.
 1986 AGREEMENT
It is undisputed by the parties that in 1982, Hi-Ranger, Inc. purchased Mobile Aerial Towers, Inc. and expressly assumed liability including any product liability claims. See, 1982 Asset Purchase Agreement at Section 1.2(ii). In 1986, Hi-Ranger, Inc. and Mobile Aerial Towers, Inc. entered into an "Agreement and Release" wherein the parties agreed to modify and amend the 1982 agreement. Apart from divesting Hi-Ranger, Inc. of products liability, the agreement also provided for a distribution agreement between the parties and included a covenant not to compete. In Article III of the agreement, the parties amended Section 1.2(ii) of the 1982 agreement as follows:
 3.1. Products Liability Amendment. Mobile and Hi-Ranger hereby agree to amend Section 1.2(ii) of the Agreement to limit the liabilities and obligations of Mobile assumed by Hi-Ranger pursuant to that provision. Specifically, the liabilities or obligations as defined therein `based upon or arising out of any claims or actions alleging defects or negligence in design or manufacture of products manufactured or shipped by MAT prior to the Closing Date, including product liability claims arising out of transactions, or resulting in injuries, alleged injuries, accidents or other event occurring prior to the Closing Date, whether or not filed against or made known to MAT prior to the Closing Date' are hereby agreed to be obligations and liabilities which are not assumed by Hi-Ranger. Further, the parties agree that such obligations and liabilities are hereby designated as new Section 1.2(vii) on page four of the Agreement as a `debt, obligation, expense or liability of MAT' which Hi-Ranger does not assume and does not agree to pay, perform or discharge.
Appellants argue the 1986 agreement is faulty and fails to pass muster because 1) the signatures representing Hi-Ranger, Inc. and Mobile Aerial Towers, Inc. are the same persons (both signing in their corporate capacity for the two companies), 2) the signatures of the 1982 and 1986 agreements do not reflect the same parties, and 3) the agreement violates public policy.
We will address each point individually. First, although it is conceded that "Thomas R. Maloney" and "Thomas E. Dalum" signed as secretary and president, respectively, for each corporation, no other evidence was presented to show that there were not two separate corporations or that these two individuals were not in fact "secretary and president" of two separate corporations. In particular, the 1986 agreement as a whole speaks to two issues which negate against appellants' arguments of fraud and collusion. Said agreement contains a covenant not to compete and contains an award of distributorship from Hi-Ranger, Inc. to Mobile Aerial Towers, Inc. which includes a specific territory and an indemnification agreement as to that distributorship. Although appellants may argue the 1986 agreement does not "smell" right, the agreement itself and the lack of any other evidence negates the argument.
Secondly, the same corporate entities signed the 1982 and 1986 agreements. Corporations in Ohio are legal entities and as such, are bound to agreements by the signature of their officers. The officers may change from time to time but the "entity" remains. There is no indication that Mobile Aerial Towers, Inc. was not a duly authorized Ohio corporation in 1986 as it was in 1982.
Lastly, appellants argue the 1986 agreement violates public policy. We disagree and find the Supreme Court of Ohio has clearly found in "contract law cases" that tort public policy arguments do not apply:
 Unlike tort law, which is guided largely by public policy considerations, contract law looks primarily to the intentions of the contracting parties. See Victorson v. Bock Laundry Machine Co. (1975), 37 N.Y.2d 395, 401, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275, 277. The concerns for predictability and free transferability in corporate acquisitions that led this court to decline to expand the test for tort successor liability in Flaugher
are even more compelling where the claim is in contract.
 Welco Industries, Inc. v. Applied Companies (1993), 67 Ohio St.3d 344, 348.
Based upon the foregoing, we find the 1986 agreement successfully transferred liability from Hi-Ranger, Inc. to Mobile Aerial Towers, Inc.
 1992 AGREEMENT
It is arguable that we need not proceed in the analysis having found no liability for Hi-Ranger, Inc. for any Mobile Aerial Tower, Inc. products based upon the 1986 agreement. However, we do believe the 1992 agreement should be reviewed to see if it withstands the Flaugher test:
 A corporation which purchases the assets of a manufacturer is not liable for injury resulting from a defective machine produced by that manufacturer unless there is an express or implied assumption of such liability, or the transaction constituting the sale of assets amounts to a de facto merger or consolidation, or the purchaser corporation is a mere continuation of the seller corporation, or the transaction is a fraudulent attempt to escape liability.
 Flaugher at paragraph one of the syllabus.
The basic challenge to the 1992 agreement is centered on issues one and two. First, appellants argue the 1992 agreement is ambiguous and did not successfully limit any express or implied assumption of liability. Appellants argue ambiguity in the agreement in two respects. First, the agreement does not state whether "Mobile Aerial Towers, Inc." refers to the 1982 Mobile Aerial Towers, Inc. or Hi-Ranger, Inc.'s subsidiary, Mobile Aerial Towers, Inc. and secondly, the disclaimer of liability contained in the agreement at paragraph 3.2 is contradicted by the language establishing the escrow account (Article IV).
As to the first argument, we disagree it is unclear who the contracting parties are. In the preamble to the agreement, Hi-Ranger, Inc. and Simon-Telelect, Inc. are specifically defined as the parties. Further, a total reading of the escrow paragraph wherein Mobile Aerial Towers, Inc. is noted (paragraph 3.3), reveals it is clear that claims chargeable against the escrow involve those units manufactured by the seller (Hi-Ranger, Inc.) known as of the date thereof or manufactured by "MAT which result in claims against Seller." This is further clarified in paragraphs 4.1 and 4.2. as follows:
 4.1 Establishment of Escrow. Contemporaneously with the execution of this Agreement, Buyer and Seller shall establish the Escrow under and pursuant to the terms and provisions of an Escrow Agreement in the form attached hereto as Exhibit 4.1 (the `Escrow Agreement').
 4.2 Purpose of Escrow. As more specifically set forth in Paragraphs 2.1(a)(1), 3.3 and 3.6 above, and in the Escrow Agreement, the purpose for the Escrow is: (a) to hold the cash paid by Buyer on execution of this Agreement pending clearance of the transaction under the Hart-Scott-Rodino Act pursuant to Paragraph 11.12 and to deliver same to Seller immediately thereafter; and (b) to provide a fund of cash against which to offset certain product liability claims and any excess warranty claims for which Seller remains responsible, as well as any claim for indemnification established pursuant to the provisions of Article IX.
Upon review, we find no patent ambiguity. In the last sentence of paragraph 3.2, buyer (appellee herein) specifically did not "assume any liability for any product manufactured by Mobile Aerial Towers, Inc. (`MAT')."
In addressing appellants' second claim of ambiguity in the agreement (it did not successfully limit any express or implied assumption of liability), we find paragraphs 3.1 and 3.2 cover claims not assumed and claims assumed and identified via paragraph 6.12 and the exhibits thereto:
 3.1 Liabilities Not Assumed. Buyer shall assume only such liabilities of seller (a) as expressly provided in Paragraphs 3.2, 3.4 and 3.6 as of the date of this Agreement; and (b) as of the Transfer Date, such contractual liabilities of Seller relating to the Business as are specified in Exhibit 3.1 to the extent such liabilities remain outstanding or as are incurred in the ordinary course of business between the date hereof and the Transfer Date. * * * Seller and its corporate successors and assigns shall remain solely responsible for all other claims against and liabilities of Seller whether now existing or arising at any time in the past or future, including specifically but not by way of limitation product liability claims other than those specifically assumed by Buyer. * * *
 3.2 Product Liability Claims Assumed by Buyer. Buyer shall assume responsibility for all product liability claims and lawsuits as and solely to the extent any such claims or lawsuits arise out of any incident involving a unit manufactured by Seller (i) occurring on or prior to the date hereof, but as to which Seller had no notice or knowledge; or (ii) occurring after the date hereof. Seller acknowledges that in assuming such liability Buyer is relying upon Seller's representation that the information set forth in Paragraph 6.12 and the Exhibits thereto are to the best of Seller's knowledge accurate and complete in all material respects; provided, however, that Buyer's remedy with respect to any breach of such representation shall be governed solely by the provisions of Article IX of this Agreement. Buyer specifically does not assume any liability for any product manufactured by Mobile Aerial Towers, Inc. (`MAT').
We do not find there is any ambiguity in the agreement given that appellee explicitly has no liability for products produced by "MAT" or any of those not disclosed and pending for which an escrow account was established. Therefore, we find there is no express or implied assumption of liability in the 1992 agreement.
Secondly, appellants argue the 1992 sale of assets was in fact a defacto merger or consolidation of the buyer and seller. As noted inFlaugher at 64, citing 1 Frumer Friedman, supra, at 70.58(12), Section5.06[2][c]:
 `The gravamen of the traditional "mere continuation" exception is the continuation of the corporate entity
rather than continuation of the business operation.'
(Emphasis sic.)
In Flaugher, the Supreme Court of Ohio set forth guidelines in determining such an issue. These guidelines include whether buyer and seller have common directors or officers, whether the buyer's assets are solely those of the seller's, whether the buyer manufactures other products and the status of the seller's corporation after the sale. TheWelco court at 349 summarized de facto mergers as follows:
 A de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor. Flaugher, supra, 30 Ohio St.3d at 71, 30 OBR at 175, 507 N.E.2d at 340 (A.W. Sweeney, J., dissenting). A de facto merger is a merger in fact without an official declaration of such. The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations. Turner, supra, 397 Mich. at 420, 244 N.W.2d at 879.
In support of it's argument that the asset sale was not a de facto
merger, appellee points to the lack of continuity of shareholders as stated in the supplemental affidavit of Cecilia Neumann at paragraph 4, attached to appellee's supplemental memorandum for summary judgment filed March 31, 2000. Appellants argue the Neumann affidavit fails because it is not based upon personal knowledge. Appellants argue we should disregard this affidavit because it fails to meet the requirements of Civ.R. 56(E) which states in pertinent part as follows:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.
Although appellants concede the Neumann affidavit states "I have personal knowledge of the facts stated in this Affidavit," they argue that in her deposition, Ms. Neumann indicated she had no such knowledge. Neumann depo. at 26.
We have reviewed the entire telephone deposition of Ms. Neumann taken on April 3, 2000 and filed on April 21, 2000. Ms. Neumann, an attorney, is deputy general counsel for Terex Corporation (appellee's parent company) and became appellee's assistant secretary in 1997. Neumann depo. at 5-6. When questioned as to the names or entities that have been appellee's shareholders, Ms. Neumann stated she would have to "go back and look at the minute books." Id. at 7-8. Ms. Neumann indicated "[m]y memory is that Simon US Holdings, Inc. was the shareholder of Telelect in 1992."Id. at 8. Ms. Neumann stated under oath in her deposition that appellee's officers in 1992 were as listed in the interrogatory responses. Id. at 9, 10. Ms. Neumann was specifically asked "[w]ere any of the individuals who have been officers of Telelect ever involved in Hi-Ranger, Inc., whether as an employee, director, officer, shareholder, independent contractor or otherwise?" Id. at 9. Ms. Neumann answered "[n]o, not to my knowledge" and explained "[n]o one would know better than I would, frankly, from the records." Id. at 9-10. Ms. Neumann admitted she did not know the names of Hi-Ranger, Inc.'s shareholders prior to the 1992 asset purchase agreement. Id. at 25-26.
In her supplemental affidavit at paragraph 4, Ms. Neumann speaks of the continuity of appellee's shareholders as follows:
 From its incorporation on January 26, 1988 until April 7, 1997, the shareholder of Terex-Telelect, Inc. formally known as Simon Telelect, Inc. was Simon U.S. Holdings, Inc. From April 7, 1997 to the present, the shareholder of Terex-Telelect, Inc. has been Terex Corporation. No person who was a shareholder of Mobile Aerial Towers, Inc. or Hi-Ranger, Inc. has been a shareholder of Terex-Telelect, Inc. at any time. They have not been any common officers or directors between Terex-Telelect, Inc. and Hi-Ranger, Inc. There have not been any common officers or directors between Terex-Telelect, Inc. and Mobile Aerial Towers, Inc.
Despite the cross-examination by appellant and the answers to the interrogatories, appellants are unable to establish any continuity of shareholders, officers or directors. In fact, only nine employees of Hi-Ranger, Inc. have been identified as working for appellee. Neumann depo. at 14; Interrogatories 6, 8, 9, 10, 12 and 25, attached to Appellants' Joint Memorandum Contra Motion for Summary Judgment, filed under seal on April 21, 2000. Upon review, we find the Neumann affidavit is based upon her personal and corporate knowledge.
Attached to an affidavit of D. Patrick Kasson, filed with appellants' joint memorandum contra motion for summary judgment filed under seal, are notes to financial statements of Hi-Ranger, Inc. Within these notes, Hi-Ranger Inc.'s shareholders are identified as follows:
 The Company's affiliates include Utility Equipment Holding Company (Parent), Utility Equipment Company, Inc., Utility Equipment Leasing Corporation, and Hi-Fab, Inc. The Company shares common officers with all affiliates and common stockholders with Utility Equipment Company, Inc., Utility Equipment Leasing Corporation, and Hi-Fab, Inc.
Based upon the Neumann and Kasson affidavits and the answers to the interrogatories filed under seal, we find there was no continuity of shareholders, officers or directors. Further, appellee's places of business are in Watertown and Huron, South Dakota. Neumann depo. at 12. Hi-Ranger, Inc. is located in Waukesha, Wisconsin. See, 1982 and 1986 Agreements. Therefore, the entities did not share the same facilities. No real property was a part of the 1992 asset purchase agreement. Neumann depo. at 19.
The brand/trade name "Hi-Ranger" was part of the agreement. Id. Hi-Ranger, Inc. described itself as a "manufacturer and sale of aerial tower equipment for mounting on special-purpose trucks used by the utility industry and other industrial customers." See, Notes to Financial Statements attached to Kasson Affidavit filed under seal. Appellee manufactures and distributes through nine dealers "utility aerial devices * * * bocket (sic) trucks and digger derricks." Neumann depo. at 10.
Based upon the lack of common shareholders, officers and directors, the different offices and different sites for manufacturing and the lack of total product similarity, we find the 1992 agreement was not a de facto
merger.
Based upon the factors enumerated in Welco, we find the granting of summary judgment was appropriate. Accordingly, the sole assignment of error is denied. We do not need to address the appropriateness of the trial court's reliance on Thompson v. Mobile Aerial Towers, Inc. (1994),862 F. Supp. 175. In addition, based upon the Supreme Court of Ohio's decision in Holeton v. Crouse Cartage Company, et al. (2001),92 Ohio St.3d 115, we find the claims of Nelson Tree Service to be disallowed.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
Gwin, P.J. concurs separately and Hoffman, J. concurs in part and dissents in part.